## FOUNTAIN RODICK *vs.* FLORA PINEO.

### Hancock.    Opinion April 5, 1921.

*The equity powers of the court may be used in applying equitable principles in
the defense to an action at law.   Equity delights to grant relief when it is meet
to do so.   But even the equity powers of a court know limits.   A court of
equity may not go outside the evidence.*

The instant action for money had and received was brought by one brother,
as assignee of another, against a sister to recover a balance claimed to be
due and unpaid from the proceeds of the consideration for the conveyance
of certain real estate.   Record title to the land was solely in defendant, but
the effect of the transaction investing that title was to make her the trustee
of a constructive trust implied by the law.   Of such trust the aforesaid assignor
and this defendant, and brothers of theirs also, eventually became bene-
ficiaries.

The court can use its equity powers in defense to an action at law.

Laches are discountenanced in equity.   Equity looks with favor upon the similar,
but not reciprocal, defense of acquiescence.   Acquiescence and laches are
personal privileges which a defendant may assert or waive at his election.

The trustee, in this action to recover the balance of the proceeds of the sale
of the assigned share, is entitled to reimbursement for expenditures with
regard to the land made by her for the benefit of both the assignor and assignee.

Equity will take cognizance of   cross-claims between litigants, although they
are wanting in mutuality, whenever it becomes necessary to effect a clear
equity or prevent injustice.

As between themselves, joint mortgagors are liable only to the extent that each
received the proceeds of the mortgage.

Interest is not chargeable against a trustee as a matter of right.   His liability
therefor depends upon the character of the trust and the circumstances attend-
ing its administration.   No rule is definable more fixed than whether he
ought in good conscience to pay it.

On report.    This is an action for money had and received, brought
by plaintiff, a brother as assignee of another brother, against a sister
to recover a balance claimed to be due from the proceeds of a convey-
ance of certain land on Bar Island in Frenchman's Bay.   The record
title of the land was in the defendant, but plaintiff claimed that the

character and nature of the transaction investing the title in defendant was such as to constitute a constructive trust implied by the law, and that she held the title to said land in trust, and the assignor of plaintiff was a beneficiary. The defendant filed a plea of the general issue and also thereunder a brief statement setting up an equitable defense for reimbursement for money she had paid in behalf of assignor, and also filed an account in set-off.

By agreement of the parties, the case, at the conclusion of the testimony, was reported to the Law Court for its determination upon so much of the evidence as was legally admissible, and judgment to be rendered to be conclusive as to all suits and equities between the parties. Judgment for plaintiff for $5796.39, with interest from date of the writ.

The case is fully stated in the opinion.

*E. S. Clark, H. L. Graham, Fellows & Fellows, and David O. Rodick,* for plaintiff.

*C. B. Pineo, and Hale & Hamlin,* for defendant.

SITTING: CORNISH, C. J., HANSON, PHILBROOK, DUNN, MORRILL, WILSON, JJ.

MORRILL, J. does not concur.

DUNN, J. Bar Island, lying in Frenchman's Bay, within the corporate limits of the town of Gouldsboro, opposite and nearby the Bar Harbor Village landing, was owned by David Rodick. His wife was living apart from him. Fearful that she would cause attachment of his property to be made, and desirous of saving the island to himself, he, by recorded deed of absolute form, dated June 1, 1865, gratuitously conveyed its title to two of his sons, one named Fountain and the other Serenus. Eight years later, at the father's request, these sons conveyed the estate to their sister, Flora, the defendant. No actual consideration moved for this conveyance, though the deed purports otherwise. As a part of the one transaction, Flora, the grantee of the brothers, contemporaneously executed and delivered to her father, a deed of the same property. Her deed never was recorded. Mr. Rodick, the father, died intestate in 1881, survived by the children already named, and also by a son called Edward, and

still another son known as Milton.   After his death, Flora, who, following that event, had found the deed among her father's papers, handed it to Fountain, for keeping in the latter's safe.   Fountain later allowed Edward to have the deed.   What Edward did with it is not shown.

Record title to the property continued in Flora for eighteen years after her father died.   Then she conveyed an undivided fifth part to Edward.   The next year she and Edward joined in mortgaging the island as security for the payment of thirty thousand dollars. Edward died.   Under the statute of descents, title to his interest passed to his widow and heirs, the encumbrance still outstanding. At their request the interests of the widow and heirs were set off. The equitable shares of Fountain and Serenus, in the remaining portion of the island, Flora acquired by purchase.   In 1909, to provide money for payment of the mortgage given by herself and Edward, Flora and Milton together mortgaged the island, exclusive of the Edward share, for forty-five thousand dollars.   By separate mortgage Flora individually raised twenty-three hundred dollars for the defrayment of tax and other dues.   That same year she and Milton sold about twenty-nine acres of the island to Mr. E. T. Stotesbury; her husband, Charles B. Pineo, Esquire, a Bar Harbor lawyer, representing the grantors in the transaction.   From the proceeds of the sale Mr. Pineo paid the commission of the real estate agent instrumental in effecting the transfer.   He paid the mortgage that his clients jointly gave, and also that which his wife alone had made; obtaining record cancellations.   The money left he deposited in a bank, three-fourths in an account to the credit of his wife and one-fourth likewise to the credit of Milton, in accordance with his understanding of the proportions in which the grantors had owned the property.   He did not affect to adjust earlier affairs of his clients.   But, submitting to each a statement of receipts and disbursements, and waiving charge for his own services, he regarded his duty as at an end.

Three years went by uneventfully.   Then Milton, a fortnight or so before he died, made assignment to Fountain of what was unpaid to him by the Pineos from the Bar Island sale.   Almost three years afterward, relying on the assignment, Fountain brought against Flora the instant action for money had and received.   His writ contains a single count.   Specification makes plain that he seeks to recover an amount equal to one-fourth the gross sale price, minus

both the agent's commission and partial payment to his assignor, and plus interest because of postponed discharge of obligation. Defendant's plea is the general issue. By brief statement she interposes an equitable defense for her reimbursement for sundry expenditures of money in Milton's behalf while he was living. And besides she presents an account in set-off for boarding Milton and men in his employment; for money advanced to buy an interest in a weir for him; for taxes paid on his share in the island; for baiting his horse, and for his proportionate part of expense incidental to the Stotesbury sale. To the brief statement and to the set-off plaintiff replies that rights of persons not parties to the litigation are involved. And, as against the set-off, he particularly invokes the statute of limitations.

An auditor was appointed. With the equitable defense he was not concerned. The auditor stated that, regarding the account in set-off as barred by statute, when the action was begun, there was due from defendant to plaintiff the sum of $11,075.38. The case was brought to trial. The auditor's report, the evidence on which that report was based, and other evidence as well, was introduced. Then the controversy was reported to the Law Court for final determination.

The effect in the law of the transaction respecting the transfer of the island by the brothers to their sister in compliance with the father's request, and of her unrecorded deed to the latter, was to vest the record title solely in Flora, while the equitable title went to the father and in him remained until it descended, in virtue of statutory provision, on his death without leaving a will, in equal shares to the five children as his only heirs at law; his wife having predeceased him. Record title continuing in Flora made of her trustee for herself, and trustee for Edward, Fountain, Serenus and Milton, each an equal undivided part. The Edward trust she discharged by conveyance of his part to him. The shares of Fountain and Serenus she herself bought. But, with reference to Milton's interest, it is to be noticed that Flora all along continued to be the trustee of a constructive trust implied by the law. With a phase of that trust this case deals. The inquiry here is essentially different than that before the auditor. Decision must be moulded by equity's ideal of right. The court can use its equity powers to apply equitable principles in the defense to an action at law. *Hurd* v. *Chase*, 100 Maine, 561.

Equity has a beneficial rule known as laches. In equity laches and neglect always have been discountenanced. Equity frowns

upon laches.   She looks with favor upon the similar, but not recipro-
cal, defense of acquiescence.   Acquiescence in distinguishment from
laches imports active assent.   It relates to inaction while an act is
being performed; laches relates to delay after the act is done.   Spring-
·ing from the same cardinal rule, that he who seeks equity must do
equity, both acquiescence and laches are intended to prevent the
doing of inequity.   And this not, like limitation at law, solely because
of a mere matter of time, but ·for the reason of assenting approval
presumed from inactivity in the one instance, and of an inequity
founded upon some change in the condition or relation of the parties
in the other.   Acquiescence and laches are personal privileges which
a defendant may waive or assert at his election.   The doctrine of
laches is not asserted here.   It is not intended to suggest that it
would be availing.   Nor does defendant rely on acquiescence.   For,
though she mentions acquiescence, yet she makes proof that no
unequivocal setting up of a right adverse to Milton ever was made
known to him.   The defensive proposition on which she would
prevail is, just credit to me will wipe out the debit that he makes,
and more.   And thus the case must be considered.

   At the outset, plaintiff readily shows himself entitled to recover
an amount equal to one-fourth of the consideration proceeding from
the Stotesbury sale; less, as is conceded, pro rata deduction for the
agent's commission, and less too what of that consideration was paid
to Milton, while he lived.   Defendant further is entitled to allowance
for any claim which she may have, legally· or equitably, not only
against Milton, but also against Fountain, both against them indi-
vidually and against them jointly.   Against her claim in set-off the
statute of limitations is pleaded.   By analogy to law equity adapts
and applies statutes of· limitations to legal demands.   But it is
unnecessary here to consider whether the statute shall be bar.   The
defendant, plea of the statute notwithstanding, was, without objec-
tion, fully heard on every feature of her case; and in the presented
situation equitable principles are controlling.   Looking over the
plea, and looking into and carefully considering the testimony, it is
our conclusion that a judgment on evidence not more definite than
that tendered in substantiation of the charge made for boarding
Milton and his men, and to support that for feeding his horse, would
be without foundation more stable than quicksand.   Mrs. Pineo was
devoted and generous to all her brothers.   With their careers, and

that of their father before them, hers was intertwined and inter-
woven in pathetic and touching degree. The seal of death has
closed the lips of father and of brothers all; Fountain having died
since this action was begun. On her part lapse of time has neither
essentially impaired the recollection of these particular transactions
nor obscured their details. She is fully as conversant with them now
as ever. Frankness characterizes the testimony of her case. She
never knew the extent of what she did. She made no charge. She
kept no record, for what was done was so done with little, if indeed
any, expectation at the time of pecuniary or equivalent reward.
She makes claim now because, and only because, of this suit against
herself. Equity delights to grant relief when it is meet to do so.
But there are limits even to the equity powers of a court. A court
of equity may not go outside the evidence.

The item for money paid out for a weir defendant eliminates.
That the statute lacks efficacy with regard to the item, incurred
within six years of the writ, for expenses incidental to the sale of the
land, the plaintiff agrees. And the sole remaining one, that for
taxes paid, is available to defendant in the trust relation, indepen-
dently of formal set-off.

Excepting in two instances, to be later mentioned more in detail—
and in each of those two instances only in an indirect way—neither
Milton nor Fountain had any of the proceeds of the original mortgage.
The avails of that mortgage, as charged to Flora, chiefly were applied
in discharging her liability on promissory notes and judgments which,
she herself testified, had their origin in accounts with grocers and
marketmen for supplies, and in bills for fodder and other things that
she bought, or, if others bought, for which she became responsible
to pay, and which, in one way or another, were used by the family or
in family enterprises. There is yet no gauge for making allowance
in her favor. There is merely vague and undistinguishing delinea-
tion of things done and moneys paid for father and for brothers, and
for various business enterprises which them concerned, during the
thirty-six years that intervened from the time of conveyance of the
island to Flora till Mr. Stotesbury purchased a part of it.

The claim for reimbursement for taxes should be calculated in
three different parts, and then aggregated:  (1) from the time of the
father's death to the time of the conveyance of the Edward B.
Rodick share; (2) thence to the time that Fountain conveyed to

Flora his interest in the island; (3) from that time to the time of the assignment by Milton to Fountain. Expressed in another way, to and including the years of 1899, 1906, and 1912, respectively. For what she paid on the entire island, while in ownership that remained as the children inherited it, she is entitled to retain an amount as great as that expended for Milton's benefit, and futhermore for Fountain's, on the one-fifth interest of each. Next, Edward's share independently held, the other children owned the remainder in undivided quarter parts; hence, the total amount Mrs. Pineo paid on Milton's fourth, and in addition what she paid on Fountain's, should be credited to her, and, after Fountain sold his interest, for what she paid on Milton's account to the assignment basic of this action.

Evidence is lacking of any tax payments previously to 1891. Nor are payments shown for any of the years of 1892, 1893, and 1894. A single receipt covers 1899 and 1900. It seems fair to make even distribution of the last mentioned between the two years. In group one, defendant paid out $3,569.98, two-fifths of which is $1,427.99. In group two, two-fourths of $3,536.43 equals $1,768.21. In the third, one-fourth of $1,819.17 is $454.79. The grand total for credit being $3,650.99.

A fee was paid a lawyer years ago for services in obtaining a reduction in the interest rate on the original mortgage. No reason is perceived why this fee or any part of it should be charged against either Milton or Fountain. That mortgage certainly never was theirs.

From the original mortgage a partnership which Milton and Edward composed had the benefit of the payment of a promissory note for $186.86. Defendant contends, and rightly, that she should have credit for this. Although, as a usual rule, equity, following the law, will not allow a set-off of debts accruing in dissimilar capacities, it is well settled that a court of equity will take cognizance of cross-claims between litigants, though wanting in mutuality, and set-off one against the other whenever it becomes necessary to effect a clear equity or prevent irremediable injustice. The equitable right of set-off is very broad. It is not dependent upon the express provisions of statute, but is derived from the rules of the civil law, and founded upon principles of natural equity and justice. *Crummett* v. *Littlefield*, 98 Maine, 317. "The right to assert set-off at law," said

Mr. Chief Justice Fuller, "is of statutory creation, but courts of equity from a very early day were accustomed to grant relief in that regard independently as well as in aid of statutes upon the subject." *Scott* v. *Armstrong*, 146 U. S., 499; 36 Law Ed., 1059. Equity is governed by real rather than nominal mutuality when special circumstances justify interposition. The Massachusetts court well has said: "In dealing with this question we are not embarrassed by technical rules at to parties or pleadings, nor limited by statute provisions as to set-off, but are at liberty, in the exercise of a jurisdiction possessed by the Court of Chancery before the enactment of such statutes, to apply the doctrine of set-off as grounded upon natural equity. . . . No doubt the general rule in equity as well as at law is that demands to be set off must be mutual, and that debts accruing in different rights cannot be set off against each other. But when there are peculiar circumstances which make it necessary, as the only way to prevent a clear injustice, to allow the set-off of debts not mutual but accruing in different rights, this may be done by courts of full equity jurisdiction. It has been held that in such cases they look beyond forms to the essence of transactions out of which the demands arise, and beyond the nominal parties to those to be affected by the decree; and if a party to be so affected has a clear natural equity, arising out of the transactions and superior to any equity which can be urged in favor of those for whose benefit the claim to an equitable set-off is resisted, such courts may order debts not mutual, but accruing in different rights, to be set-off and made to discharge each other." *Merrill* v. *Cape Ann Granite Co.*, 161 Mass., 212. Both members of the partnership that gave the note which Mrs. Pineo paid are now dead. Presumably the partnership estate and their individual estates have long since been settled. The fact that Mrs. Pineo has all these years preserved the note, and now presents it, as a debit against Milton, is a circumstance having some tendency to show that perhaps Milton influenced her to pay the note. But, whatever the moving spring of payment was, it would be palpably inequitable, at this day, in the situation here, to deny defendant set-off. And she shall have set-off additionally for payment from the earlier mortgage for a note given by a firm which Fountain and Serenus composed, which she now presents as a claim against Fountain; the face of this note being $2516.00.

We have not overlooked the fact that Milton Rodick was one of only two mortgagors in the later or second mortgage. From this premise, standing alone, it might be argued that, in justness and fairness, one-half of the amount paid in discharge of that mortgage should be charged against his share of the proceeds of the Stotesbury sale, and thus by a single entry extinguish the plaintiff's demand. But such an argument, in view of the whole case, would be as insubstantial as a rainbow. The second mortgage was given to pay the first. The first was that which Flora and Edward gave. And Flora alone was called upon to pay. To pay the one debt she created another, Milton joining to secure its payment. As between the mortgagors and the mortgagee the debt was jointly that of Flora and Milton. As between the mortgagors it was Flora's separate debt toward which Milton lent the sanction of security of his equitable interest in Bar Island.

Casting up the account on debit and credit sides, as the items are gleaned from the evidence, it shows:

## FLORA PINEO

### in account with

## FOUNTAIN RODICK, Assignee of MILTON RODICK

| DR. | | CR. | |
|---|---|---|---|
| To one-fourth amount received from Stotesbury sale | $21,195.00 | By, paid Milton Rodick's part agent's commission | $    529.88 |
| | | By, paid Milton Rodick | 8,514.88 |
| | | By, taxes | 3,650.99 |
| | | By, M. & E. B. Rodick note | 186.86 |
| | | By, F. & S. H. Rodick note | 2,516.00 |
| | | *By balance* | *5,796.39* |
| | $21,195.00 | | $21,195.00 |

Plaintiff would exact interest on the balance. Eminent authority is extent for the statement that, in an action for money had and received, interest is recoverable only from the date of the writ, unless demand be both alleged and proved. *Ordway* v. *Colcord,* 14 Allen, 59; *Talbot* v. *Bank,* 129 Mass., 67. But this canon need not be employed to support decision. A trustee is not chargeable with interest as a matter of right. His liability therefor depends upon the character of the trust and the circumstances attending its administration. Merely having money of the cestui que trust is not sufficient to charge the trustee with interest; that must depend upon other facts. It is fundamental that a trustee shall derive no gain, benefit or advantage by the use of the trust funds. If he be remiss in activity, in prudence, care, reasonable skill and proper diligence, or if he repudiate the trust, or refuse or unnecessarily delay an accounting, interest should be entered against him. No rule is definable more fixed than whether he ought in good conscience to pay.

Flora Pineo never disavowed the trust. She paid out certain of the money from the real estate sale, in discharge of a mortgage given by herself and Milton on their interests, to redeem from a mortgage that she and Edward previously had encumbered the whole island with. The money which came from the first mortgage went, partly to Edward, some to Serenus, still other for taxes, yet more to Fountain; and, in part, in payment of debts which Flora testified she incurred for the family benefit, the amount being unknown. Her insistence was and is that from the balance of the sale price Milton owed her more than she owed him; and there is strong suggestion in the case that that might appear to be the fact were defendant's proof complete. Suffice it to say that, as the court weighs the case, good conscience does not impel the imposition of interest before commencement of the action.

Judgment will be entered for the plaintiff for $5796.39 with interest from the date of the writ.

Agreeably to stipulation of the parties in reporting this case, upon the filing of rescript herein, in case number 4844, *Fountain Rodick* v. *Flora Pineo,* and in case number 4955, *Fountain Rodick* v. *Charles B. Pineo,* both on the Hancock nisi docket, the entry will be made: Neither party no further action.

*Judgment and docket entries*
*accordingly.*