Argued April 11, affirmed as modified May 2, petition
for rehearing denied June 13, 1956

# WATERBURY *v.* NICOL ET AL

296 P. 2d 487
298 P. 2d 211

*John H. Hall,* Newport, argued the cause and filed briefs for appellant.

*David Fain,* Portland, argued the cause for respondents. On the brief were Black, Kendall & Fain, George Black, Jr., and Stewart Tremaine, Portland.

Before Tooze, Acting Chief Justice, and Rossman, Lusk, Brand and Perry, Justices.

TOOZE, A.C.J.

This is a suit for removal of trustees, an accounting, and other relief, brought by Mary Nicol Waterbury, as plaintiff, against Bella S. Nicol, George Black, and James Douglas Nicol, individually and as trustees

under the last will and testament of James Nicol, deceased, and Helen Gorham Nicol, as defendants. During the pendency of the suit defendant George Black died testate, and George Black, Jr., and Harvey Nicol Black, as executors of the estate of said decedent, were substituted as parties defendant. A decree was entered in favor of defendants, dismissing plaintiff's suit; plaintiff appeals.

The defendant Bella S. Nicol is the widow, and defendant James Douglas Nicol, plaintiff Mary Nicol Waterbury, and one Mildred Elizabeth Nicol (now Myers) are the son and daughters and heirs-at-law of James Nicol, deceased. Defendant George Black, now deceased, is the uncle (by marriage) of said Nicol children.

James Nicol died testate in Portland, Oregon, on January 6, 1932, and his last will and testament was duly admitted to probate in the circuit court for Multnomah county, Oregon, probate department, on January 11, 1932. By the terms of said will certain bequests were made to individuals named therein, and during the course of administration of said estate were duly paid in full. The rest, residue, and remainder of the assets of said estate were left to defendants Bella S. Nicol, George Black (since deceased), and James Douglas Nicol in trust for the following uses and purposes: Said trustees were directed to invest and reinvest the corpus of the trust and to pay from principal or income the sum of not to exceed $3,000 per year to defendant Bella S. Nicol during the remainder of her natural life. By the terms thereof said trust is to remain in full force and effect until the death of the defendant Bella S. Nicol; upon the termination of the trust, the plaintiff Mary Stuart Nichol (now Waterbury) is to be paid $15,000, and the remainder of the trust assets

is to be divided equally between the plaintiff, James Douglas Nicol, and Mildred Elizabeth Nicol (now Myers).

By deed dated October 7, 1940, the trustees acquired as a part of the assets of the trust estate the following described real property located in Multnomah county, Oregon:

"Beginning at an iron pipe in the center of Greenwood Road and the northwest corner of Block 95, DUNTHORPE, thence easterly along the center of Greenwood Road 254.56 feet to a point in the center of Pacific Highway; thence southerly along the center of said Pacific Highway 215.94 feet to a point; thence north 78° 15' west 256.45 feet more or less to a point in the westerly line of Block 95; thence northerly along said line 171.17 feet to the place of beginning, containing 1.1 acres more or less and also known as 02406 S.W. Greenwood Road."

This deed was taken in satisfaction of a promissory note belonging to the estate, the note having been secured by a mortgage on said real property. At the time the deed was taken the estate had invested in the property the sum of $9,998.

At the time this property was acquired, it was in a state of disrepair, particularly the dwelling house thereon. The trustees were unable to negotiate a sale thereof.

Some time in October, 1940, the trustees entered into the following oral agreement with defendant James Douglas Nicol, one of the trustees, and Helen Gorham Nicol, his wife: That defendant James Douglas Nicol and his wife were to take up residence on the property in question, care for it, making needed repairs and improvements thereon, and to pay as rental therefor the sum of $50 per month; it was further orally agreed that

the said defendant and his wife, when financially able so to do, could purchase the said property from the trust estate for the amount of money that the estate had invested therein at the time of purchase, with interest thereon at 5 per cent per annum. Neither the plaintiff nor her sister Mildred Elizabeth Myers were parties to the agreement nor present when it was made.

Defendant James Douglas Nicol and his family moved onto said premises about November 1, 1940, and have continuously occupied it since that time. Until on or about August 1, 1952, said defendant James Douglas Nicol regularly paid to said estate rental for said property at the rate of $50 per month, and during the period of time from November 1, 1940, to August 1, 1952, expended approximately $3,500 on repairs and improvements to the premises.

On or about August 1, 1952, the said property was deeded to defendant Helen Gorham Nicol, the agreed price therefor being $13,000. The $13,000 represented the sum of money the trust estate had invested in the property at that time, plus interest at the rate of 5 per cent per annum. The amount was figured by George Black (since deceased), one of the trustees, pursuant to an understanding between the trustees. In passing, we might state that the principal work in administering the trust estate fell upon the shoulders of Mr. Black.

Upon making the purchase, defendant Helen Gorham Nicol paid to the estate the sum of $3,000 (her own money), and defendant James Douglas Nicol paid $500, making a total of $3,500. Defendant Helen Gorham Nicol executed and delivered to the estate her promissory note in the sum of $9,500, representing the balance due on the purchase price, and she and her husband, defendant James Douglas Nicol,

executed and delivered to the estate a mortgage lien upon said property to secure the payment of said promissory note.

On the trial plaintiff offered the testimony of experts to the effect that the average and reasonable rental value of the property in question throughout the entire period of time defendants James Douglas Nicol and wife paid rental therefor in the sum of $50 per month, was the sum of $125 per month. Plaintiff also produced expert testimony to the effect that the reasonable market value of the property on August 1, 1952, when it was deeded to defendant Helen Gorham Nicol, was the sum of $21,000. Defendants offered no substantial evidence to refute this testimony of the expert witnesses.

Plaintiff in her complaint charged the defendant trustees with a breach of trust in renting said property to one of the trustees for a sum much below the reasonable rental value thereof and in selling the property to such trustee and his wife (although title was taken in the name of the wife only) for a sum substantially less than the reasonable market value thereof. She asked for an accounting between the trustees and the plaintiff and other beneficiaries of the trust; for a judgment against defendants Bella S. Nicol, George Black, and James Douglas Nicol, and each of them individually, in favor of the trustees of the estate of James Nicol, deceased, for the difference between the reasonable rental value of the premises and the sum paid by defendants James Douglas Nicol and his wife, with interest thereon; for a decree ordering and requiring defendants James Douglas Nicol and Helen Gorham Nicol, his wife, to reconvey said property to the trustees under the last will and testament of James Nicol, deceased, or to their successors, and in the event

of their refusal, inability or failure to so reconvey, that the decree stand in lieu of a deed; and for a decree removing the defendants Bella S. Nicol, George Black, and James Douglas Nicol as trustees and appointing new and different trustees in their stead.

The gist of the defense offered by defendants is contained in paragraphs III, IV, V, and VI of their affirmative defense which read as follows:

## "III.

"In October of 1940 the property described in the plaintiff's complaint was taken into the trust in satisfaction of a mortgage debt; it consisted of the land so described and a small residence building thereon which was uninhabited; at that time, with the full and complete knowledge, consent and acquiescence of all of the beneficiaries of this trust, including Mary Stuart Nicol, an arrangement was made by and between the trustees of this trust and James Douglas Nicol and his wife, Helen Gorham Nicol, under which it was agreed that said James Douglas Nicol and his wife, Helen Gorham Nicol, would move into said premises and use and occupy the same as their residence, paying to the trustees a rental therefor of $50.00 a month, and that whenever they were able and desired to do so, they would be privileged to buy said property from the trustees at a price equal to what the trust estate had in the property as determined by the trustees Bella S. Nicol and George Black; that in consideration thereof and in reliance thereon, said James Douglas Nicol and his wife, Helen Gorham Nicol, moved into said property and by their efforts and money put the same in a tenantable condition, and have at all times since continued to live therein; that said agreement, consent and understanding has existed and continued to exist with all of the beneficiaries and trustees of this trust, at all times since it was made, as aforesaid.

## "IV.

"That said James Douglas Nicol and Helen Gorham Nicol paid to said trust said rental amounts of $50.00 per month, as agreed, and on or about August 1, 1952 the said transaction, agreed upon and consented to as aforesaid, for the purchase of said residence property from the trustees, was consummated through the purchase of said property by said Helen Gorham Nicol at a price and terms which were satisfactory to said trustees Bella S. Nicol and George Black, and which were considered by them to be fair and reasonable under the circumstances.

## "V.

"That ever since the time in 1933 at which this testamentary trust came into being, a full and complete statement of all income and disbursements of this trust, and of the source and items thereof, in writing, has been prepared by the trustees and delivered annually to each of the beneficiaries of this trust, including Mary Stuart Nicol; that said annual written statements disclosed, amongst other things, the exact rental being paid to the trust by James Douglas Nicol and Helen Gorham Nicol for the period of time commencing with the date upon which they entered occupancy of said premises and continuing up to and including the time of the purchase of said property, as aforesaid, on August 1, 1952, and the 1952 statement, in the regular course, properly showed the consummation of the sale transaction as aforesaid; that said Mary Stuart Nicol was at all times familiar with the real property referred to herein and knew the rental that was being paid and received therefor, and knew of the agreement for the sale of said property, aforesaid, and knew all of the circumstances applicable thereto, as set forth herein, and consented to the transactions related herein, and each thereof, and approved the same; that her said consent and approval continued to at all times exist and she at no time evidenced any objection to the trustees with

regard to said transactions, or any thereof, until the filing by her of her complaint in this case.

## "VI.

"That defendants carried on and consummated the transactions referred to herein, and each thereof, in good faith and in reliance upon the said consent, acquiescence and approval of all of the trust beneficiaries, including Mary Stuart Nicol, as aforesaid, throughout the entire period of time referred to herein, all of which said Mary Stuart Nicol has at all times well known, and now knows; that, by reason of the facts and circumstances aforesaid, Mary Stuart Nicol should not and cannot be permitted now to object to the amount of rental so received by the trustees from said premises and/or to the sale of said premises to Helen Gorham Nicol, as aforesaid, or now to complain of any of the matters asserted or complained of by her in her complaint in this case, and she is estopped, by her conduct and laches, so to do."

The evidence reveals that the Nicol family was a closely-knit family; they frequently visited in each other's homes, and most amicable relations existed between them. Until after the plaintiff had been divorced from her former husband, Alick Wilson, on or about the year 1947, there had been no rift whatever in the family relations. It seems that whatever misunderstanding they ever had grew out of a mysterious Mr. Waterbury to whom Mary claimed to be married, but who was never introduced to any of the family members. To a family as closely related as this one the non-appearance of Mr. Waterbury may have caused great concern, although to an outsider it might seem to be much ado about nothing. But whether justified or not, a misunderstanding arose between plaintiff and her family, and it is manifest from the record that it

604

is that misunderstanding which provided the motivating influence for this litigation.

Irrespective of the reasons that have apparently caused plaintiff to turn against her family, we are, nevertheless, faced in this litigation with a trust relationship and all its attendant duties and responsibilities.

The evidence discloses that on the 1st of January of each year, the trustees furnished to all beneficiaries, the plaintiff included, a detailed written report respecting the trust estate and its administration. Copies of such annual reports for the years 1940 to 1952, inclusive, were admitted in evidence. On each of these reports under the heading "receipts" appears the item of rental for the property occupied by defendant James Douglas Nicol and his wife, showing rental paid at the rate of $50 per month.

During the occupancy of the premises by said defendant and his wife, plaintiff frequently visited in the home and had the opportunity to observe the improvements being made therein by defendants. The parties frequently met in the offices of trustee Black to discuss the affairs of the trust estate; plaintiff also resorted to Black's office to discuss her own personal business affairs in connection with the operation of a riding academy which she and her husband conducted. The occupancy of the Dunthorpe home by the defendant James Douglas Nicol and his family and his intention to purchase it when financially able to do so were matters of frequent family discussion, in which plaintiff participated.

There is substantial evidence in the record of a strong and convincing character that the plaintiff knew generally of the oral understanding and agreement between the trustees and the defendant James Douglas

Nicol and his wife respecting the rental, improvement, and purchase of the property shortly after it was made in 1940, and that she expressly approved thereof. She had actual knowledge of the rental being paid by her brother and the improvements to the property being made pursuant to the oral agreement of 1940. Not once did she offer any objection to the trustees or anyone else, so far as the record discloses, as to the amount of rental being paid until she filed this suit. In her reply she pleaded ignorance of real estate rentals or value as her excuse for not objecting before suit was commenced, but the record does not substantiate the claim. On the contrary, the evidence shows her to be an intelligent woman of extensive experience in business affairs.

The situation with respect to the sale of the property for the sum of $13,000 in August, 1952, presents a different matter entirely. Although in 1940 she knew generally of the oral agreement to sell the property at some time in the future for the amount of money the estate had invested in it, she could not then possibly know the amount of the purchase price nor whether it was a fair and reasonable price until the sale was consummated. The sale was consummated August 1, 1952; she learned of its terms in the annual report of the trustees for the year 1952, received by her in January, 1953, and she commenced this suit on February 11, 1953.

We make note of the fact that Mildred Nicol Myers, plaintiff's sister, although a resident of Tacoma, Washington, knew of the oral agreement to rent and purchase, of the rentals paid, and of the sale for $13,000, and she expressly approved the whole transaction as a witness for defendants, being a confirmation of her prior approval.

■■ All that remains is to apply the law to the factual situation as stated. The fundamental duty of loyalty and good faith which a trustee owes to the beneficiaries of a trust and the rigid standard of behavior required of him when he acts in his own interest in the performance of his duties are recognized by all courts, including our own.

In no decision has the grave responsibility resting upon trustees been better stated than in the language employed by Chief Judge Cardozo in *Meinhard v. Salmon*, 249 NY 458, 464, 164 NE 545, 62 ALR 1, as follows:

> "Many forms of conduct permissible in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate. Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the 'disintegrating erosion' of particular exceptions. Wendt v. Fischer, 243 N.Y. 439, 444, 154 N.E. 303. Only thus has the level of conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court."

Although the rule of strict responsibility applies to trustees and is never departed from, yet there are decisions in which a trustee has been excused from the consequences of an act done fairly and in good faith with the consent of the beneficiary, who was sui juris and fully acquainted with all the relevant facts and his legal rights, and was not improperly influenced by the trustee. The transactions involved were usually

between the trustee and third persons, and not where the trustee dealt with himself personally.

In 3 Pomeroy, Equity Jurisprudence (5th ed) 814, § 958d, we find the following rules stated:

"In the second place, where the trustee deals, with respect to the trust, directly with his beneficiary: A purchase by a trustee from his *cestui que trust,* even for a fair price and without any undue advantage, or any other transaction between them by which the trustee obtains a benefit, is generally voidable, and will be set aside on behalf of the beneficiary; it is at least *prima facie* voidable upon the mere facts thus stated.

"There is, however, no imperative rule of equity that a transaction between the parties is necessarily, in every instance, voidable. It is possible for the trustee to overcome the presumption of invalidity. If the trustee can show, by unimpeachable and convincing evidence, that the beneficiary, being *sui juris, had full information and complete understanding of all the facts concerning the property* and the transaction itself, and the person with whom he was dealing, *and gave a perfectly free consent, and that the price paid was fair and adequate, and that he made to the beneficiary a perfectly honest and complete disclosure of all the knowledge or information concerning the property possessed by himself,* or which he might, with reasonable diligence, have possessed, *and that he has obtained no undue or inequitable advantage,* and especially if it appears that the beneficiary acted in the transaction upon the independent information and advice of some intelligent third person, competent to give such advice, then the transaction will be sustained by a court of equity.

"*  *  *  *  *  *

"The doctrine is enforced with the utmost stringency when the transaction is in the nature of a bounty conferred upon the trustee,—a gift or bene-

fit without full consideration. Such a transaction will not be sustained, unless the trust relation was for the time being completely suspended, and the beneficiary acted throughout upon independent advice, and upon the fullest information and knowledge.'' (Italics ours except latin phrases.)

■ There is a well-established distinction between the consent of a beneficiary and his failure to object to the wrongful action of a trustee. The mere fact that the beneficiary knows that the trustee is committing a breach of trust but fails to object is not sufficient to preclude him from holding the trustee liable for his improper conduct. This is particularly true when the trustee is dealing with the beneficiary on his own account.

In 2 Scott on Trusts 1157, § 216.3, we find the following statement:

"The consent of a beneficiary will not preclude him from holding the trustee liable if he is not *sui juris* at the time of giving such consent or at the time and when the trustee commits the breach of trust. Even if the beneficiary is *sui juris, his consent will not preclude him from holding the trustee liable unless when he gave his consent he had knowledge of all relevant facts that the trustee knew or should have known and of his legal rights.* Even if he does have such knowledge, he is not precluded if his consent was induced by improper conduct of the trustee. The beneficiary is not precluded by his consent where at the time when he gave it he was not of competent age and understanding, even though he was not under a legal incapacity. The relation between the trustee and beneficiary being a fiduciary relation, the trustee must not in any way take advantage of his position. The parties are not dealing at arm's length and the trustee is bound to consider not only his own interest but that of the beneficiary as well.

"If the trustee is dealing with the beneficiary on his own account, *the transaction can also be set aside if it is not a fair transaction. Thus where the trustee with the consent of the beneficiary sells trust property to himself individually, it is essential also that the sale should be at a price which is fair and reasonable.* The situation is different from that which arises where the beneficiary consents to a sale of trust property to a third person, where the mere fact that the property is sold at less than its fair value is not of itself a sufficient ground for setting aside the sale." (Italics ours.)

██ Tested by the foregoing rules, the facts in this case do not excuse the trustees for their dereliction in selling the property in question to the defendants James Douglas Nicol and his wife for a sum of money substantially less than the reasonable market value thereof. Such sale constituted a breach of trust and is voidable at the suit of plaintiff. Had plaintiff ratified the sale after it had been made, or fully understanding all the relevant facts and acting upon independent advice, she had expressly consented to it at the time it was made, the situation might have been different. The decision in each case must largely depend upon its own perculiar facts and circumstances. In *Ryan v. Plath,* 20 Wash2d 663, 148 P2d 946, is to be found an exhaustive discussion of the rules applicable to the duties and responsibilities of trustees, particularly as applied to purchases of trust property by themselves, with the exceptions to strict liability pointed out. We approve of the discussion found in that opinion. See also 54 Am Jur, Trusts, 359, § 453; 370, § 466; 90 CJS 238, Trusts § 247 d.

█ However, in our opinion the situation as to the matter of rental presents an entirely different problem. At the time the oral agreement was made, a care-

taker for the premises was needed, substantial repairs and improvements (the extent of which was then unknown) were required to place and keep the property in good condition, and defendant James Douglas Nicol, although a trustee, was available for the purposes mentioned. Although the sum of $50 per month as rental, standing alone, was inadequate, nevertheless, in the light of the duty of the tenant to make the necessary repairs and improvements, whatever they might be, we cannot say that the sum agreed upon was unreasonable or unconscionable under the circumstances. Plaintiff had the right to consent to the rental of the premises by the trustee for the amount agreed upon, coupled with the duty of making repairs and improvements and caring for the property. She not only approved the rental agreement shortly after it was made, but for more than 12 years she acquiesced in the continued occupation of the property by the defendants James Douglas Nicol and his wife upon the agreed terms. She made no objection. Under the peculiar facts and circumstances of this case, we are of the opinion that she should be and is estopped by her conduct now to claim a breach of trust on the part of the trustees in that connection, particularly in the light of the fact that defendants during their occupancy and in keeping with their agreement expended substantial sums of money in repairs and improvements to the property. It seems to us that to permit plaintiff now to assert successfully such a claim would be inequitable and wholly unjust. *McIver v. Norman,* 187 Or 516, 205 P2d 137, 213 P2d 144; *Goldman v. Kaplan,* 170 F2d 503; *Rodick v. Pineo,* 120 Maine 160, 113 A 45; *Blauvelt v. The Citizens Trust Co.,* 3 NJ 545, 71 A2d 184; 2 Scott on Trusts 1162, § 218.

■ Defendants occupied these premises under a ten-

ancy from month to month. ORS 91.070. Although plaintiff approved of the tenancy upon the conditions stated, such approval was not irrevocable. The commencement of this suit on February 11, 1953, was, in effect, a revocation of her consent and a demand that the property be rented for its reasonable rental value. The trustees could have terminated the tenancy at that time, at least upon giving 30 days' notice of termination. Subsequent to that time, no valid excuse existed for continuing the rental at the wholly inadequate sum of $50 per month. The reasonable rental value of the property was $125 per month, and commencing March 11, 1953, such rental should have been demanded and was due. From August 1, 1952, the date the deed was executed, to March 11, 1953, rental is due at the rate of $50 per month.

Because of the peculiar factual situation existing in this case, which includes an entire lack of bad faith or intentional wrongdoing on the part of the trustees, we arrived at our conclusion respecting the sale of the property with great reluctance, but we could not possibly do otherwise without seriously undermining and doing violence to the strict but just rules applicable to fiduciary relationships.

The decree of the trial court should be and is modified by ordering and decreeing that defendants James Douglas Nicol and Helen Gorham Nicol, his wife, reconvey the real property hereinabove particularly described to the trustees of the estate of James Nicol, deceased, and upon such reconveyance the promissory note of defendant Helen Gorham Nicol be surrendered to her by the trustees and the mortgage executed by said defendants be cancelled, or if defendants fail to reconvey said premises as directed, that the decree stand in lieu of such conveyance; that judgment be

entered in favor of the trust estate and against defendants for unpaid rental in the sum of $50 per month from August 1, 1952, to March 11, 1953, and in the sum of $125 per month from March 11, 1953, to the date the transaction is closed, and that there be off-set against the amount of rental due and unpaid the sum of $3,500 paid by defendants upon the purchase price of said premises; in all other respects the decree is affirmed.

Neither party shall recover costs.

## ON REHEARING

On Respondents' Petition for Rehearing

John H. Hall, Newport, attorney for appellant.

Black, Kendall & Fain, George Black, Jr., and Stewart Termaine, Portland, for the petition.

Before Tooze, Acting Chief Justice, and Rossman, Lusk, Brand and Perry, Justices.

TOOZE, A.C.J.

Defendants have filed a petition for a rehearing in which they ask for a modification of our holding in the original opinion.

We modified the decree of the trial court by ordering and directing a reconveyance of the real property by the defendants James Douglas Nicol and Helen Gorham Nicol, his wife, to the trustees of the estate of James Nicol, deceased, and a cancellation of the note and mortgage upon the premises executed and delivered by said defendants to the estate; we also directed that judgment be entered against defendants in favor of the trust estate for unpaid rental in the sum of $50 per month from August 1, 1952, to March 11, 1953, and in the sum of $125 per month from March 11, 1953, to the date the transaction is closed, and that there be offset against the amount of rental due and unpaid the sum of $3,500 paid by defendants upon the purchase price of said premises. This sum of $3,500 represented the cash down payment upon the original purchase price, the balance of the purchase price being included in the note and mortgage mentioned.

■ In their petition for rehearing defendants suggest that after the purchase was made by them they made substantial payments upon the principal and interest due upon the promissory note, and also paid real property taxes upon the residence property, together with certain premiums on a fire insurance policy covering the dwelling house, and urge upon us the propriety of allowing them credit for such sums upon their reconveyance of the property to the estate. In the light of the decision we reached, we are of the opinion that defendants are entitled to credit for the sums of money so paid by them, along with the $3,500 cash payment made originally. If the total of such payments exceeds the amount of rental unpaid as fixed in our original opinion, then upon such reconveyance defendants are entitled to be reimbursed for such excess out of the funds of the estate.

■ We do not agree with defendants that the beneficiaries of the trust estate, the plaintiff included, do not have any interest in the income of the trust estate during the lifetime of the widow, defendant Bella S. Nicol. It is true, as contended by the defendants, that the will under which the trust estate was created provides that *all interest and income of the trust fund* (this would include rentals) received by the trustees shall be paid to the widow, Bella S. Nicol, during her lifetime; nevertheless, the direction is not absolute. On the contrary, before such income is paid to the widow, the will directs that there shall first be deducted therefrom all taxes, rates and charges on or in respect thereto *and all expenses of whatever nature attending the execution of this trust.* In other words, the widow is to receive the net income, not the gross. The beneficiaries of the trust certainly have a direct interest in the payment of all expenses attending the execution of the trust, and the income from the trust fund is first charged with liability therefor. The plaintiff had an interest in the rental of the premises by the trustees for a reasonable amount.

■ In their brief supporting their petition for a rehearing, defendants pose this question:

"If this transaction is to be reversed, defendants-respondents ask for a clarification of your Opinion, and instructions to them, as to whether they are privileged to permit Helen and Douglas Nicol to occupy these residence premises hereafter and in the future, as tenants thereof, without receiving the express prior consent of the plaintiff Mary, and, further, whether, if they are so privileged, Mary has the right to approve or disapprove the amount of rental charged."

It is manifest that the trustees are empowered to rent the property for the reasonable rental value

thereof without the consent of the beneficiaries. However, when a trustee engages in self-dealing with the trust estate, he is met with very stringent rules governing the conduct of trustees. The general rule is that a trustee should not engage in self-dealing; i.e., he should not deal as trustee with himself as an individual. It may be that self-dealing with the trust estate under certain circumstances would be justified, but ordinarily it should never be done without the express and understanding consent of the beneficiary or the approval of the court. 54 Am Jur 250, § 315.

Our original opinion will be modified by remanding this cause to the trial court with directions to ascertain and determine the several sums paid by defendants as follows: (1) principal and interest upon the purchase price note and mortgage; (2) real property taxes upon the premises accruing since the purchase thereof; and (3) fire insurance premiums upon the premises accruing since the purchase thereof. When these several sums are determined, the court shall allow defendants credit therefor, together with the sum of $3,500 paid by them as a cash down payment upon the purchase price of the property. Upon a reconveyance of the property to the trust estate, the note and mortgage shall not only be cancelled, but defendants shall be reimbursed by the trust estate for any excess amount of money paid by them at the time of and subsequent to the original purchase of the property as hereinabove mentioned, over and above the sum to be charged against them as unpaid rental as fixed in our original opinion.

Other than as modified herein, we adhere to our original opinion.

The petition for rehearing is denied.