Argued and submitted December 19, 1989, on appeal, judgment reversed as to damages for Portland property and modified to award damages for Klamath Falls property; affirmed on cross-appeal April 4, reconsideration denied June 13, petition for review denied July 3, 1990 (310 Or 133)

MEST,
*Respondent - Cross-Appellant,*

*v.*

DUGAN et al,
*Appellants - Cross-Respondents.*

(A8706-04032; CA A50101)

790 P2d 38

Wade Regier, Portland, argued the cause for appellants - cross-respondents. On the briefs was Gary M. Bullock, Portland.

Dennis H. Elliott, Portland, argued the cause and filed the brief for respondent - cross-appellant.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

## WARREN, J.

Plaintiff, one of the beneficiaries[1] of a trust established in 1964 by James O. Fisher, Sr., brought this action against two of the trustees[2] for their claimed mismanagement of the only assets of the trust, two pieces of real property, one in Portland and one in Klamath Falls. The properties were operated as auto dealerships when the trust was established: James O. Fisher, Jr., owned and operated Jim Fisher Downtown Imports on three-quarters of a city block in Portland and George Dugan and Bob Mest, sons-in-law of the trustor, ran a Chevrolet dealership in Klamath Falls. Plaintiff alleged three claims for breach of fiduciary duty: (1) execution of the 1979 lease of the Portland property to Fisher Imports; (2) execution of a new lease in 1985 for the Portland property to Fisher Imports; and (3) renewing in 1985 the lease on the Klamath Falls property to George Dugan Chevrolet Co.[3] The effect of the transactions was that defendants had leased both trust properties to themselves.

The trial court found that the trust instrument allowed defendants to engage in self-dealing and that exculpatory language in the instrument required plaintiff to prove that they had acted in bad faith. The trial court also found that defendants did not obtain an appraisal or evaluation of the property before the 1985 leases were executed and held that defendants' actions in leasing to themselves without first determining the fair market rental value constituted bad faith. The trial court entered judgment for plaintiff on his second and third claims.[4]

---

[1] Plaintiff's interest vested in June, 1984, after which he accepted a one-ninth interest in the properties in lieu of cash. He did not waive his claims in this action by accepting benefits from the disputed transactions. *See Waterbury v. Nicol,* 207 Or 595, 296 P2d 487, 298 P2d 211 (1956).

[2] After the complaint was filed, James O. Fisher, Jr., died. The personal representatives of the estate were substituted as defendants. ORCP 34B.

[3] There was no error in refusing to grant defendants a jury trial. The claims were equitable. *See Cloud v. U.S. National Bank,* 280 Or 83, 570 P2d 350 (1977).

[4] The written judgment awarded $9,090 on plaintiff's second claim, which was for the lease of the Portland property in 1985, and $40,564.01 on the third claim regarding the Klamath Falls property. The judgment did not reflect the trial court's oral award of $10,564.01 for the Klamath Falls property and $39,090 for the Portland property. On appeal, defendants compound the confusion by referring to the larger judgment as the judgment for the Portland property and then, in their reply brief, by asserting that the larger award is for the Klamath Falls property.

■    We deal first with a procedural issue raised by defendants. The trial court did not err by refusing to dismiss for plaintiff's failure to join all of the beneficiaries, not all of whom are vested. Plaintiff's action sought the damages that he claims to have suffered as a result of the trustees' conduct and would not affect the trust to the damage of other beneficiaries. They were not necessary parties. *Condon v. Bank of California,* 92 Or App 691, 759 P2d 1137 (1988).

In plaintiff's cross-appeal, he challenges the court's conclusion that he had to prove bad faith in connection with all three claims, because, even if the trustees acted in good faith, self-dealing would be a breach of the trust. We do not agree. The standard of care for the trustees here is stated in the exculpatory clause contained in Article V(m) of the trust instrument and provides:

> "The Trustees shall not be liable for any action taken, or for failure to take any action, on the advice of legal counsel or otherwise, save and except where such act or failure to act is due to fraud or bad faith."

Plaintiff argues that the exculpatory clause does not specifically mention self-dealing and should not be held to apply to the challenged actions because of the strict principle that a trustee has a duty of loyalty to act on behalf of the beneficiaries to the exclusion of the trustee's own interest. *See Waterbury v. Nicol, supra* n 1, 207 Or at 606.

■ ■    On *de novo* review, we agree with the trial court's conclusion that the trust instrument permitted self-dealing by the trustees and that the exculpatory clause exonerates them, in the absence of bad faith. Exculpatory clauses do not reduce or enlarge the standard of care owed by a trustee, but a clause may relieve a trustee of personal liability and be valid in the absence of an attempt to eliminate liability completely. *See* Bogert, *Trusts and Trustees,* § 542 (2nd ed 1978). The trustees here were given broad discretion in the management of the trust. The instrument does not require them to use the properties for the highest and best use, absolves them of liability for any investment loss and permits them to treat the property as

if they were the owners.[5] The quoted exculpatory language comports with the instrument as a whole, which shields the trustees' decisions from scrutiny, in the absence of bad faith.

In their appeal, defendants assign error to the trial court's holding that plaintiff pled and proved facts sufficient to state a claim for relief. They argue that because, under the terms of the trust, they were allowed to self-deal, leasing the properties to themselves could not constitute "bad faith." Defendants urge that bad faith requires some kind of ill will or evil motive, *see Browning v. Fidelity Trust Co.,* 250 F 321 (3rd cir 1918), which plaintiff did not prove. Plaintiff urges that bad faith is not dependent on moral guilt but, rather, may rest on a selfish or interested motive that results in reckless indifference to the rights of a beneficiary. *See Black's Law Dictionary* 176 (4th ed 1968).

■■ No Oregon cases have analyzed bad faith in the context of an exculpatory clause in a trust instrument. Although "good faith" and "bad faith" suggest a subjective element in the actor's state of mind, *see Maine Bonding v. Centennial Ins. Co.,* 298 Or 514, 519, 693 P2d 1296 (1985), we conclude that, in a self-dealing situation, a conscious or intentional element is not required to prove bad faith. A trustee's act that completely ignores the interests of beneficiaries, intentional or not, constitutes bad faith. To hold otherwise would negate a primary purpose of the trust—administration of the assets for the benefit of the beneficiaries. *See Grandy et al v. Robinson,* 180 Or 315, 324, 175 P2d 463 (1946). As the Supreme Court stated in addressing the standard of care owed by an insurer in a conflict of interest situation:

> "Good faith requires the insurer * * * to treat the conflicting interests of itself and the insured with impartiality, giving equal consideration to both interests." *Eastham v. Oregon Auto. Ins. Co.,* 273 Or 600, 607, 540 P2d 364 (1975).

No less a standard can apply to a trustee. Even if the trust

---

[5] The trust instrument authorizes the trustees to invest in any property "without liability to said Trustees for any loss or diminution of the principal or income of the Trusts by reason of such investment or reinvestment," to invest the trust property and trust funds in any manner which they deem to be "in the best interest of the Trust estates, without being restricted to statutory investments," and to engage in any conduct that might be legally done or performed by an individual in absolute ownership of the properties of the trust.

instrument allows a trustee to consider his own interests, he cannot do so without consideration of the interests of the beneficiaries. If he does, he acts in bad faith. *See Chiles v. Robertson,* 94 Or App 604, 767 P2d 903, *mod* 96 Or App 658, 774 P2d 500, *rev den* 308 Or 592 (1989).

■ The issue, then, is whether the trustees' actions here were in total disregard of the interests of the beneficiaries. We conclude that, in the execution of the 1985 leases, they were. The bad faith of defendants was not in deciding to keep the leases in auto dealerships in which they were involved. As trustees, they could decide to continue to lease the property to the dealerships; that decision, in and of itself, is not actionable under the trust. What makes it actionable is the failure to determine the fair rental value of the property when used for dealerships. At the time the leases were renewed, the trustees did not make any determination as to whether the rental rates were reasonable in the current market.[6] That determination was essential to the interests of the beneficiaries. *See Jarrett v. U.S. National Bank,* 81 Or App 242, 725 P2d 384 (1986) *rev den* 302 Or 476 (1987); *Hatcher v. U.S. National Bank,* 56 Or App 643, 643 P2d 359, *rev den* 293 Or 373 (1982).

Defendants next argue that the evidence does not support the award of damages for the Klamath Falls lease. They argue that plaintiff's expert witness based his testimony on the assumption that the trust would continue to have the use of contiguous property that was owned individually by trustee Dugan and that plaintiff failed to present any evidence of what the property was worth as a separate economic unit.

Defendants rely on *United States v. Fuller,* 409 US 488, 93 S Ct 801, 35 L Ed 2d 16 (1973), a condemnation case in which the court held that, in valuing the highest and best use of condemned property, the condemned property could not be considered in conjunction with contiguous parcels when the

---

[6] In contrast, the 1979 lease of the Portland property was not made in bad faith. Jay Wilson, a certified public accountant, who was a trustee but not a beneficiary, made a market inquiry before the 1979 lease. He testified that he had inquired of real estate experts as to the possibility of renting the property for a greater price than Fisher Imports was willing to pay and that there was a possibility that the trust would have needed to spend sizeable sums if the property were to be leased to other parties. It was not bad faith for the trustees to conclude, in those circumstances, that it was preferable to accept Fisher Imports as a tenant at the prevailing rent rather than have it vacate the property, leaving the trust without income.

contiguous land was owned by the condemnor and used by the condemnee only under revocable permit from the condemnor. However, the Supreme Court did not disagree with the general rule, which does allow consideration of combined properties. 409 US at 490. Here, the expert testified that he considered the Dugan property in conjunction with the trust property and then "backed out" some of the Dugan property in order to determine which dealerships in and out of Klamath Falls were comparable. The importance of the Dugan land in valuing the trust property is a matter of weight as one of the factors in an assessment of value. *See Unified Sewerage Agency v. Duyck*, 33 Or App 375, 576 P2d 816 (1978). The expert determined that, in January, 1986, the Klamath Falls dealership paid the lowest rental of all the comparable dealerships and that the difference between that rent and the fair market rent was $1,075 a month. He calculated the difference for the term of the lease, the percentage of plaintiff's interest and the present value of that interest. We are persuaded by that testimony that plaintiff was damaged in the amount of $10,564.01 by the Klamath Falls lease.[7]

■■ Defendants next argue that the court erred in awarding damages for the Portland property. We agree. Plaintiff failed to prove the market rental value of that property as an *automobile dealership*. As noted above, the decision by the trustees to continue leasing the property for that use was not an actionable decision. The trust did not require "the highest and best use" of the property, but that was the assumption on which plaintiff's experts based their testimony. One determined that highest and best use was a "secondary commercial building that could be used by a single tenant or multiple tenants," such as a bike shop, hardware supplier or plumbing supplier. He did not view the property as "an exclusive automotive building." The other also based his opinion of the rental value on the highest and best use of the property, which he considered to be warehouse and office space.[8] There is

---

[7] That determination is supported by the evidence from plaintiff's witness, Hargrave. We are unable to determine the basis for the entry of the written judgment (see n 4, *supra*) and neither party explains it.

[8] There was no error in allowing plaintiff to present expert testimony by a real estate agent who was not a licensed real estate appraiser. *State Dept. of Trans. v. Montgomery Ward Dev.*, 79 Or App 457, 719 P2d 507, *rev den* 301 Or 667 (1986).

insufficient evidence from which we may calculate a reasonable rental for the Portland property as an automobile dealership in 1985 and, consequently, what damage plaintiff sustained.[9]

On appeal, judgment reversed as to damages for Portland property and modified to award damages of $10,564.01 for Klamath Falls property; affirmed on cross-appeal.

---

[9] Defendants' remaining assignments do not merit discussion.