Argued June 15, affirmed July 23, 1970

# McFERRON, Administrator, *Respondent, v.*
# TRASK, *Appellant.*
### 472 P2d 847

*J. Ray Rhoten,* Salem, argued the cause for appellant. On the briefs were Rhoten, Rhoten & Speerstra, Salem.

*C. S. Emmons,* Albany, argued the cause for respondent. With him on the brief were Emmons, Kyle & Kropp, Albany.

Before SCHWAB, Chief Judge, and LANGTRY and FOLEY, Judges.

SCHWAB, C.J.

Ralph Trask (now deceased), the plaintiff, entered into a contract for the sale of his residence real property. His wife refused to join in the conveyance. He then brought suit to compel his wife, Rillie Trask, to execute the necessary documents. Mrs. Trask answered the complaint by contending that she was entitled to ownership of the house by virtue of an oral agreement between her and her husband; that, in any event, she had a statutory right to a homestead interest in the house and she also counter-claimed for past support money saying that at the time of the marriage he had promised to support her and had failed to so

do. The circuit court found for the plaintiff, Ralph
Trask, and Mrs. Trask appeals.

There is conflict in the testimony as to certain
matters. However, the following facts are undisputed.

The plaintiff and the defendant were married on
or about March 18, 1953, after a six-month engage-
ment. At the time of the marriage both were 59 years
old. The marriage was the second for the plaintiff-
husband and the third for the defendant-wife. For
years prior to the marriage the wife and her sister
had been in the floral business, first in Dallas and then
in Albany. Some two years after the marriage the
sisters sold the Albany floral business. After that sale
Mrs. Trask obtained a part-time job in her son's bus-
iness located in Lyons. While she was working for her
son she did not live with her husband in Albany. All
through the marriage she supported herself except dur-
ing the periods when she lived in the husband's Albany
house which is the subject of this suit. During those
periods the husband provided the family food. The
record does not disclose that Mrs. Trask had any
assets except for her investment in the floral shop
which was sold for a total price of $12,500, and a half-
interest in a duplex which she owned with her sister.

Mr. Trask had been permanently crippled by polio
or a similar disease some 30 years prior to his mar-
riage to the defendant. At the time of the marriage
his only assets were a house in Albany and some sav-
ings. The house had been divided into either two or
three apartments, in one of which he lived. At the time
of the trial in 1969, his savings totaled $23,240, $15,000
of which he inherited in 1960. The contract of sale
covering the house in question was for a total price of
$18,200. Mr. Trask's income from his savings averaged

about $600 per year after 1960; his rental income from the apartments never exceeded $900 per year gross. His only other source of income was from making generator parts in a shop building adjacent to the house. The income from this activity never exceeded $3,000 in any one year. It diminished to negligible amounts during the years 1960-1963 and nothing thereafter.

Mr. Trask's pre-existing physical handicaps were further aggravated by a heart attack in the spring of 1958, a stroke in the fall of 1964 and another stroke in early 1966. The last stroke apparently left him in poor condition. His testimony at the trial was largely incoherent and in many instances nonresponsive.

On or about March 13, 1953, just a few days prior to the marriage, the parties executed an ante-nuptial agreement which was drawn by Mr. Trask's attorney. The dispute concerns the ante-nuptial agreement.

Mrs. Trask contends that when she went to the attorney's office at Mr. Trask's request the agreement was already drawn and that she signed it without fully understanding it. The attorney testified that he discussed the desires of the respective parties with them in the presence of both and thereafter drew the agreement in accordance with their express wishes. Mrs. Trask testified that prior to or contemporaneous with the execution of the ante-nuptial agreement Mr. Trask promised to support her and provide her with a home which she understood to be the residence property in question. Mr. Trask denied making such promises. The attorney who drew the ante-nuptial agreement denied any knowledge of such an agreement.

The ante-nuptial agreement which was introduced into evidence contains five brief paragraphs. Para-

graphs 1 and 2 provide that each party "shall keep and retain as his [her] sole and separate property all property, real, personal, and mixed, wheresoever situated, now had and possessed by him [her]."

Paragraph 3 provides that each party should retain as his sole and separate property all rents, profits and income derived from his separate property, and paragraphs 4 and 5 waive dower and curtesy.

■ Mrs. Trask argues that she should not be bound by the ante-nuptial agreement because Mr. Trask fraudulently induced her to enter into it by making oral promises he did not intend to keep—specifically, promises to support her and provide her with a home. We agree with the trial court's finding that no such inducements were made.

■ She also argues, citing *Bauer v. Bauer,* 1 Or App 504, 464 P2d 710 (1970), and *Kosik v. George,* 253 Or 15, 452 P2d 560 (1969), that the ante-nuptial agreement is void because she executed it without the advice of her own attorney and without being informed of Mr. Trask's assets. Lack of knowledge and lack of counsel were elements which were considered in the *Kosik* and *Bauer* cases, but they were not the sole bases of those decisions. In both, the males were men of considerable wealth and business experience and the females were, for all practical purposes, without either assets or business experience. In neither case did the wife have any idea of the husband's holdings. Here the defendant was an experienced businesswoman with long experience in making her own way. Not only did she know what she was signing and what rights she and her intended husband were mutually foregoing, but she admits that she knew

the nature, if not the exact value, of Mr. Trask's assets. The ante-nuptial agreement was valid and enforceable.

■ Mrs. Trask argues that under the provisions of ORS 23.240 she was entitled to a homestead interest in the real property in question up to the value of $7,500. ORS 23.240 creates a limitation on the rights of creditors, not a right of one spouse as against the other. *Mansfield v. Hill*, 56 Or 400, 107 P 471, 108 P 1007 (1910).

■■ Finally, Mrs. Trask also argues that she is entitled to prevail on her counter-claim for past support because ORS 108.070 and 167.605 create a duty upon the part of her husband to support her. ORS 108.070 deals with the rights of an abandoned wife whose husband has absented himself from the state a year or more, and ORS 167.605 is a criminal nonsupport statute. Neither is applicable here.

Affirmed.