Argued and submitted January 27, reversed and remanded May 21, Cohen's reconsideration and Transportation's reconsideration denied July 11, both petitions for review denied September 3, 1986 (301 Or 667)

STATE OF OREGON, by and through
its Department of Transportation,
*Respondent,*

*v.*

MONTGOMERY WARD DEVELOPMENT
CORPORATION et al,
*Defendants,*

FIRST UNION REAL ESTATE EQUITY &
MORTGAGE INVESTMENTS et al,
*Appellants.*

STATE OF OREGON, by and through
its Department of Transportation,
*Respondent,*

*v.*

COHEN et al,
*Appellants.*

STATE OF OREGON, by and through
its Department of Transportation,
*Respondent,*

*v.*

COHEN et al,
*Appellants.*

(A8001-00003, A8001-00004, A8001-00005; CA A30941)

719 P2d 507

458

Susan P. Graber, Portland, argued the cause for appellants First Union Real Estate Equity & Mortgage Investments, First Union Commercial Properties Expansion Co., and First Union Management., Inc. With her on the briefs were Jeffrey M. Alden and Rives Kistler, and Stoel, Rives, Boley, Fraser & Wyse, Portland.

James H. Clarke, Portland, argued the cause for appellants Richard M. Cohen, Morris Weissman, and Richard M. Cohen and Morris Weissman, partners, doing business as C & W Associates, Portland. With him on the briefs were Robert E. Maloney, Jr., Lindsey H. Hughes, and Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland.

Christine L. Dickey, Assistant Attorney General, Salem, argued the cause for respondent. With her on the briefs were Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, John R. McCulloch, Jr., Chief Trial Counsel, and Richard D. Wasserman, Assistant Attorney General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

Defendants are owners of real property on which Mall 205, a shopping center in east Multnomah County, is located. The state commenced this eminent domain proceeding to acquire a portion of defendants' land to construct an access road to Interstate 205 (I-205). The plans for the access road called for relocating S.E. 96th Avenue in a diagonal across defendants' land, dividing the property in two. The new road severs a triangle of approximately 4.2 acres from the rest of the shopping center.

The state filed three complaints against various defendants involving different portions of the property. Many defendants were defaulted. The defendants that appeared in the action were the three First Union entities (First Union) and Cohen and Weissman, individually and as partners (Cohen and Weissman). The claims were consolidated for trial, because defendants' interests coincided, at least to the extent of securing the maximum compensation. Defendants filed cross-claims against each other to establish their title to the land taken.

The issue of just compensation involved a consideration of various factors. First, defendants were entitled to compensation for the property taken: a fee simple title to the strip of land for the street and an adjacent easement. Second, defendants were entitled to damages, if any, caused by the severance of their remaining property into two parcels. Third, the damages could be reduced or offset by any increase in the value of the property attributable to the announcement, planning, construction and development of the I-205 project.

The state's complaints, filed January 2, 1980, alleged the true value of the property taken and the resulting damages as $582,800. The state desired immediate possession of the property and deposited in court the sum of $600,800, pursuant to ORS 35.265.

On December 31, 1982, defendants entered into an agreement settling their cross-claims and agreeing to a single jury award for all defendants. The agreement allegedly was based on defendants' understanding that the $600,800 the

state paid into court would be the minimum verdict. Defendants agreed that Cohen and Weissman would receive 75 percent of the deposit, less $8,000 they had paid to another party. First Union would receive 25 percent of the deposit. Any damages recovered in excess of $600,800 would be divided 85 percent to First Union and 15 percent to Cohen and Weissman. After they reached the agreement, defendants withdrew the money deposited in court.

The state filed amended complaints on September 23, 1983, alleging the true value of the property taken and damages as $213,500, instead of the original $582,800. Defendants opposed the state's motion to amend its complaints. They assign error to the trial court's allowing the state to amend the complaints, which permitted the jury to return a verdict of $213,500. Defendants also assign error to the court's admitting evidence and giving and denying instructions relating to special benefits and enhancement of value due to the I-205 project. In addition, Cohen and Weissman and First Union claim that they were denied a fair trial by the trial court's ruling limiting participation by their separate counsel. They also claim that the trial court erred in permitting expert testimony because the witness did not possess an Oregon real estate license. Finally, they claim that the court erred in denying their motions for mistrial and a new trial based on alleged attorney misconduct and juror bias.

■ ■ We first consider defendants' claim that the trial court erred in permitting the state to amend its complaints to state a lower value as just compensation after defendants had withdrawn the money deposited in court. Defendants first contend that the allegations of value in the original complaints are binding admissions. An allegation of value in the complaint is an admission of liability for the taking in a certain amount and is the minimum verdict a jury can return. *Highway Commission v. Kliks,* 238 Or 281, 283, 393 P2d 763 (1964). However, once a pleading is amended, the original allegation of value is no longer a binding admission. *Ralston v. Spoor,* 39 Or App 883, 889, 593 P2d 1285, *rev den* 287 Or 149 (1979). Because the complaints were amended, the issue becomes whether the trial court abused its discretion in permitting the state to amend. We conclude that the trial court did not. The state recomputed its estimate of defendants' damages by considering, for the first time after the

original complaints were filed, new theories which take into account the enhanced value of the property taken and special benefits to the remainder due to the I-205 project. The state was entitled to introduce evidence of those factors to help the jury determine just compensation. Although amending the complaints permitted the jury to return a lower verdict, defendants do not demonstrate that they were prejudiced thereby in their ability to present their case. The trial court did not abuse its discretion in permitting the amendments.

■ Defendants also urge this court to adopt a broad rule that all money deposited in court by the state, in order to acquire immediate possession of land to be condemned, and withdrawn by the property owners irrevocably becomes the landowners' and is not subject to recoupment by the state in a case such as this, where the jury returns a verdict lower than the deposit. Defendants rely on *O. R. & N. Co. v. Oregon Real Estate Co.*, 10 Or 444 (1882), as support for the proposition. That was an action by a private company to acquire an easement. The complaint alleged that just compensation for the land to be taken was $1,500, and the plaintiff deposited that sum in court. The Supreme Court held that the trial court's instruction that the jury could find the damages to be between $250 and $11,000 was error, stating that

> "the payment into court was a positive admission of damages to the amount of the tender. The money paid in became the money of the [landowner]." 10 Or at 445.

That case was tried on a complaint which alleged that the true value was $1,500. An instruction permitting the jury to return a lower verdict was error, because the complaint on which the case was tried admitted a value of $1,500.

■ The relevent statutes do not specifically provide for the state's recovering the amount by which its deposit exceeds the verdict, nor do they preclude this result. Defendants are entitled to recover only "just compensation" for the property taken and resulting damages. Or Const, Art I, § 18. They should not receive a windfall simply because the state's pre-trial deposit was greater than the verdict that the jury returned. Because the state is required to pay amounts by which the verdict exceeds the deposit, ORS 35.325, common sense indicates that it should likewise be entitled to recover the amount by which its deposit exceeds the verdict. In

addition, a condemnor may elect to abandon the action, even after entry of the verdict, in which case the defendant must return all money it withdrew which the condemnor deposited in court for immediate possession, offset by its damages and attorney fees and costs. ORS 35.335; *City of Silverton v. Porter,* 28 Or App 415, 559 P2d 1297 (1977).[1] If the state may abandon the ation and recover its deposit and then recommence the action stating a lower value in its complaint, it should be allowed to recover the excess of its deposit after acquiring title.[2]

The broad rule which defendants urge is contrary to that in every jurisdiction which we have examined. *See, e.g., United States v. Miller,* 317 US 369, 63 S Ct 276, 87 LEd 336 (1943); *City of Downey v. Johnson,* 79 Cal App 3d 970, 145 Cal Rptr 298 (1978); *Kellett v. Department of Transp.,* 174 Ga App 214, 329 SE2d 514 (1985); *Dept. of Transp. v. New Century Engineering,* 97 Ill 2d 343, 73 Ill Dec 538, 454 NE2d 635 (1983); *State v. Swarva,* 86 Wash 2d 29, 541 P2d 982 (1975). These and other jurisdictions uniformly hold, by statute or court decision, that defendants in condemnation actions must repay the amount by which the condemnor's deposit exceeds the verdict. We adopt that rule as appropriate in this case.

Defendants also argue that the state should have been held estopped to amend its pleadings after defendants had settled their cross-claims and had withdrawn the money relying on the assumption that the amount deposited would be their minimum recovery. Defendants fail to show how they were prejudiced by the amendment, other than by the fact that it permitted the jury to set just compensation at a value lower

---

[1] *City of Silverton v. Porter, supra,* also contains *dictum* to the effect that the hardship resulting from abandonment

"* * * is no different than that which may result where the jury awards as compensation an amount significantly less than the sum paid to the condemnee pending judgment, the condemnation is completed, and the condemnee must pay back the balance." 28 Or App at 419-20.

[2] ORS 35.285(1) provides that the condemnor's deposit in court may be distributed to the defendants "for or on account of the just compensation to be awarded in the action, upon such terms and conditions as may appear just and reasonable." That section may permit the court to limit a defendant's withdrawal of the deposit to a percentage or to condition withdrawal on the defendant's posting a bond securing repayment of the excess of the deposit over the verdict. *See, e.g., State, By & Through Dept. of Hwys. v. Helehan,* 607 P2d 537, (Mont. 1980).

than that alleged in the original complaints. Defendants are not entitled to recover more than just compensation in any case, and the state should not be estopped to amend its complaint downward so that it could try to prove what constitutes just compensation.

■ ■ Defendants next assign error to the admission of evidence relating to special benefits. As a general proposition, compensation for damages to the property not taken caused by the severance of a portion of the property by condemnation may be reduced by special benefits to the remaining property which are due to the project for which the property is taken. Special benefits may be offset only against damages to the remainder and may not reduce damages for the property actually taken. *State Highway Com. v. Bailey et al,* 212 Or 261, 277, 319 P2d 906 (1957). Special benefits are those which are peculiar to the tract and which increase its accessibility and enhance the highest and best uses of the property. For example, in *Bailey,* a portion of land was taken to construct a highway. The remaining property was provided with specific rights to enter and cross the highway, and its highest use was upgraded from agriculture to residential because of the new accessibility. In addition, the state constructed fences and a conduit along and beneath the road for the defendants' benefit. The court held that these were special benefits to the remaining property which could offset severance damages.

■ Special benefits are distinguished from general benefits which may not be used to reduce severance damages, even though they may increase the value of land not taken.

> "Benefits which are common to the public or which the land of defendant shares in common with lands of others in the community which do not abut upon the highway [are general benefits and] may not be considered." *State Highway Com. v. Bailey, et al, supra,* 212 Or at 306.

General benefits arise from " 'facilities and advantages caused by the way, which affect all estates equally.' " *State Highway Com. v. Bailey et al, supra,* 212 Or at 305-06, *quoting Hillbourne v. Suffolk,* 120 Mass 393, 21 Am Rep 522 (1876).

The first item of special benefits which the state sought to prove was that defendants would gain title to a portion of old S.E. 96th Avenue, which would be vacated

because the street was relocated over defendants' property. Over defendants' objection, the state's witness testified that it was his opinion that the street probably would be vacated and that defendants would thereby acquire 34,320 square feet, worth $6 per square foot. The state sought a set-off of $205,000 for that special benefit. Defendants objected on the grounds that the testimony was speculative and lacked a proper foundation and the witness was not qualified to give such an opinion.

Assuming that it was evidence of a special benefit to defendants' remaining land, we agree that defendants' objections to the testimony were well-founded. Evidence of special benefits must not be speculative but must be shown to be reasonably probable. *State Highway Com. v. Bailey et al, supra,* 212 Or at 306. The witness who gave the testimony, Curtis, was qualified only as an expert real estate appraiser. He was retained by the state to appraise the property taken by the state. There was no showing that he was qualified to give an opinion as to the probability of the vacation of a street. He stated that he based his opinion on a conversation with a traffic engineer for Multnomah County whose responsibility it is to give recommendations for vacations of streets. Curtis did not describe the topic of his conversations with this other person, nor did he state the facts on which he based his opinion. The opinion thus lacks a proper foundation. Moreover, the opinion is speculative because the decision to vacate rests with another county body and is independent of the I-205 project, and there is no evidence regarding the county's policy or procedures as to street vacations. For these reasons the trial court erred in admitting the evidence of that special benefit.

The trial court also admitted evidence of traffic volume on I-205 near the mall, as evidence of additional special benefits to the mall property. Defendants objected to the evidence as irrelevant and as evidence of general, and not special, benefits. The exhibits which the court admitted showed the volume of traffic on I-205 near Mall 205 in July, 1983. The exhibits did not show traffic volumes at any other time and did not purport to compare that volume to traffic volume in the area before I-205 was constructed. We fail to see the probative value of the evidence in the absence of such a

comparison which could show the increase in traffic due to I-205. Moreover, increased volume of traffic on I-205 is not a special benefit which is peculiar to defendants' property. It is presumably a general benefit to all property in the area, including that which does not abut the highway, and to the public in general. Evidence of increased traffic volume is not evidence of a special benefit and should not have been admitted.

 Evidence of the vacation of old S.E. 96th Avenue and of increased traffic volume were the only items admitted to show special benefits. Having concluded that all of the evidence of special benefits was erroneously admitted, we hold that the question of special benefits should not have been submitted to the jury, and the case must be remanded for a new trial. The issues raised by certain other assignments of error may arise on retrial, and we turn to them now.

 Defendants assign error to the admission of evidence and to jury instructions concerning the enhanced value of the property taken due to the announcement and construction of the I-205 project. Oregon recognizes the principle that compensation for property taken is determined as of the date of the taking, but any increase in the value of the property which is due to the planning, announcement and construction of the project for which the property is taken is not to be considered in making the award. *State Highway Com. v. Stumbo et al*, 222 Or 62, 74, 352 P2d 477 (1960). Defendants acknowledge the "scope of the project" rule, under which the enhanced value of property taken is not compensable if, "during the course of the planning or original construction it became evident that land so situated would probably be needed for the public use." *United States v. Reynolds*, 397 US 14, 21, 90 S Ct 803, 25 L Ed2d 12 (1970). They argue, however, that the rule should not be applied in this case, because there was a 14-year delay between the first announcement of the project and the commencement of this action, during which plans for the taking were changed often. Factors to be considered in applying the rule are the foreseeability of the taking, the passage of time between the announcement of the project and the taking and government representations concerning the certainty of any proposed taking. *U.S. v. 62.17 Acres of Land, Etc., in Jasper Cty*, 538 F2d 670, 680 (5th Cir 1976).

Applying the three factors, we conclude that the trial court properly applied the scope of the project rule in admitting evidence regarding enhanced value. Although the plans changed frequently during the 14 years before the actual taking, most plans called for some kind of taking similar to that which occurred. There was no evidence of government representations which misled defendants or caused them any prejudice. Finally, we do not see how defendants were prejudiced by the application of the rule simply because there was a long delay before the taking occurred. The trial court instructed the jury that defendants could not recover the enhancement of value which was due only to the I-205 project. Defendants were not precluded from showing how the market value of their property increased before 1980 independently of the announcement of I-205. The trial court did not err in any regard concerning the issue of enhanced value of the property taken.

Defendants next contend that they were denied due process of law guaranteed by the Fourteenth Amendment by the trial court's limiting participation in the trial by their separate counsel. As stated above, Cohen and Weissman had somewhat different interests from those of First Union in the single award, and they were separately represented. Cohen and Weissman had a greater interest in any award up to $600,800; they contend their strategy would be to protect an award in that amount by showing a greater value of the property taken and disputing evidence that the value had been enhanced by the project. First Union had a greater interest in any award exceeding $600,800; it claims that its strategy was potentially more risky and would have been to show greater severance damages to the property not taken and to dispute evidence of special benefits which could be offset against the severance damages.

The trial court thought that defendants' interests substantially coincided to seek the greatest overall award and limited participation of their separate counsel. The court ruled that only one of defendants' attorneys could examine or cross-examine a particular witness and make objections to the examination of each witness, in which the other attorney must join if he so desired. Defendants acknowledge that the trial court has broad discretion in controlling the conduct of a trial,

*Biegler v. Kirby,* 281 Or 423, 427, 574 P2d 1127 (1978), but they assert that the court abused its discretion by limiting their separate participation in this case because their interests truly conflicted. They rely on *Dupont v. Southern Pacific Company,* 366 F2d 193 (5th Cir 1966).

*Dupont* involved a collision between a train and an automobile occupied by a driver and three passengers, all of whom were killed. The survivors of the car's occupants filed four separate suits, which were consolidated for trial. The passengers' survivors claimed that the accident was caused by the concurrent negligence of the driver and the railroad, while the driver's survivors claimed that it was due to the sole negligence of the railroad. The trial court ordered all the plaintiffs to designate one of their attorneys as lead counsel to conduct the trial. The Court of Appeals held that the trial court abused its discretion in ordering consolidation and requiring all of the plaintiffs to proceed through a lead counsel because these rulings could cause confusion to the jury and prejudice to the passengers' survivors because of the conflict between their interests and those of the driver's survivors due to their conflicting claims regarding the driver's negligence.

We conclude that the trial court did not abuse its discretion in this case. Although defendants had different interests in the recovery, their interests did not conflict, but coincided generally in securing the largest award. As to the one particular in which defendants claim that their strategies would have differed, disputing evidence of special benefits and enhanced value, we think that those interests also coincided. Both strategies involve disputing the theory that the I-205 project produced any increase in the value of the entire parcel. Defendants do not point to any particular way in which their tactics would have differed had their separate counsel been entitled to full participation, nor do they assert any specific prejudice resulting from the court's ruling. Defendants were not precluded from calling or examining any witnesses they wished to examine or from arguing their cases separately to the jury in closing. The ruling only prevented potentially duplicative examination and cross-examination of each witness. We decline to find an abuse of discretion in the absence of a clear showing of particular instances of prejudice.

Defendants' next assignment contests the court's

overruling their objection to the expert testimony of a witness on the ground that he lacked an Oregon real estate license. The state called Egan as an expert witness on shopping centers. He has extensive experience and is a licensed real estate professional in California. He testified as to the types and development of shopping centers in general and of Mall 205 in particular. He also testified as to the impact of I-205 and relocated S.E. 96th Avenue on the mall in terms of the potential for future development. Egan did not testify at all as to real estate values.

Defendants objected to Egan's testimony on the ground that, because he is not licensed to engage in real estate activity in Oregon, his testimony is prohibited by ORS 696.020(1), which provides:

> "No person shall engage in, carry on, advertise or purport to engage in or carry on professional real estate activity, or act in the capacity of, a real estate licensee within this state without first obtaining a license as provided for in this chapter."

Defendants assert that Egan's testifying in this case constitutes "professional real estate activity," relying on the following definition of that term in ORS 696.010(10):

> " 'Professional real estate activity' means any of the following actions, when engaged in for another and for compensation or with the intention or in the expectation or upon the promise of receiving or collecting compensation, by any person who:
>
> "* * * * *
>
> "(m) * * * advises, counsels, consults, or analyzes in connection with real estate values, sales or dispositions, including dispositions through eminent domain procedures."

Defendants claim that Egan's testimony consisted of analysis in connection with a disposition through an eminent domain procedure.

Assuming that Egan's preparation for and testifying at trial was professional real estate activity within ORS 696.010(10)(m), we do not think that ORS 696.020 prevents Egan's testifying. It prohibits an unlicensed person from receiving compensation for real estate activity. It does not prevent a person from testifying as an expert, and any person

may so testify provided that he or she is properly qualified. Defendants raise no issue as to Egan's qualifications as an expert, nor do they dispute his receiving a fee for his services or even state that he did receive compensation. Because his qualifications are not challenged, he is competent to testify as an expert witness, despite his not possessing an Oregon real estate license. OEC 702. Lack of an Oregon license bears only upon the weight to be given his testimony. *See State v. Walker,* 58 Or App 607, 649 P2d 624 (1982). The trial court did not err in permitting Egan to testify.

Defendants also assign error to the trial court's denial of their several motions for mistrial, made on the basis of alleged jury misconduct and allegedly improper statements and examination by the state's attorney. We mention this only because we agree with defendants that comments made by the state's attorney were improper and potentially prejudicial. Given our decision in this case, we need not decide whether they would require reversal. We assume that on retrial, similar improprieties will not occur and that if they do, on appropriate timely objections the trial court will make rulings to ensure defendants a fair trial.

Reversed and remanded.