Argued and submitted March 29, affirmed September 11, reconsideration denied
November 6, petition for review denied December 17, 1991 (312 Or 527)

# David MOSLEY
## and Shirley Mosley,
*Respondents,*

*v.*

# David OWENS, M.D.,
*Appellant.*

## (L88-1583; CA A63738)

816 P2d 1198

George A. Burgott, Eugene, argued the cause for appellant. With him on the briefs were Darst B. Atherly and Atherly, Butler & Burgott, Eugene.

John Paul Graff, Salem, argued the cause for respondents. With him on the brief was Gatti, Gatti & Maier, Salem.

Before Buttler, Presiding Judge, and Rossman and De Muniz, Judges.

ROSSMAN, J.

## ROSSMAN, J.

This is a medical malpractice action in which the jury returned a substantial verdict in favor of plaintiff and his wife.[1] Defendant appeals on the ground that, contrary to Oregon's "locality rule," ORS 677.095,[2] plaintiff's expert witness was not familiar with the customary medical practices of specialists in Roseburg or a similar community, and therefore was not competent to testify as a medical expert. Determining whether an individual is qualified to testify as an expert witness is a matter that falls within the discretion of the trial court. *Myers v. Cessna Aircraft,* 275 Or 501, 519, 553 P2d 355 (1976). Accordingly, we review for abuse of discretion. *State v. Caulder,* 75 Or App 457, 460, 706 P2d 1007, *rev den* 300 Or 451 (1985).

Plaintiff went to a hospital emergency room complaining of two lumps that had developed behind his right ear. The emergency room doctor made a preliminary diagnosis of swollen lymph glands and sent plaintiff to defendant, a board-certified otolayrngologist (ear, nose and throat specialist) practicing in Roseburg. Because the lumps had developed rapidly and were tender, defendant expressed concern that they might be malignant, and recommended a "partial parotidectomy," which involved surgically removing both masses and a portion of the parotid (salivary) gland that surrounded one of them. Plaintiff consented to a "right parotidectomy and possible neck dissection." During the surgery, defendant had difficulty identifying the lower (inferior) branch of the facial nerve, which ran through the area in which the uppermost lump was located. The upper (superior) branch of the facial nerve was not identified or isolated. Defendant removed the first lump and the surrounding portions of the parotid gland, then removed the second lump,

---

[1] For purposes of this opinion, we refer to David Mosley, the patient, as "plaintiff." The jury awarded him $500,000 for general damages and $33,330 for special damages, and awarded Shirley Mosley $75,000 for loss of consortium.

[2] ORS 677.095 provides, in part:

"A physician or podiatrist licensed to practice medicine [in Oregon] has the duty to use that degree of care, skill and diligence which is used by ordinarily careful physicians or podiatrists in the same or similar circumstances *in the community of the physician or podiatrist or a similar community.*" (Emphasis supplied.)

which was located farther down plaintiff's neck. Both specimens were sent to a pathologist who reported that the specimens were not malignant. Before closing the surgical site, defendant stimulated the exposed nerve and only the lower half of plaintiff's face moved.

When he awakened, plaintiff showed signs of facial paralysis. Thinking that post-surgery swelling might be placing pressure on the facial nerve, defendant prescribed a drug to reduce swelling and inflammation. Plaintiff's partial loss of facial function did not improve with that treatment, and his facial nerve did not respond to stimulation through the skin. After consulting with another doctor, defendant decided to perform exploratory surgery to examine all branches of the nerve and to determine whether any part of it had been damaged. He testified that, during the second surgery, the relevant[3] portions of the facial nerve were found intact and undamaged. Plaintiff has since undergone two additional surgeries and has regained control of almost all of his facial functions. He remains unable to close his right eyelid. The experts appear to agree that plaintiff's condition is consistent with a compromised superior branch of the facial nerve.

Plaintiff sued defendant for negligent failure to diagnose and treat the non-cancerous lumps, and for negligent performance of the initial surgery. To establish that defendant had breached the standard of care to which physicians who perform that type of surgery are held, plaintiff called as an expert witness Dr. Turnbull, an otolaryngologist from Newport Beach, California.[4] Turnbull testified that defendant should have used four preoperative diagnostic procedures — CT scan, MRI, sialogram and fine needle biopsy — that would have shown that plaintiff's lumps were not cancerous but were inflammatory in origin and did not require surgery. On cross-examination, he acknowleged that

---

[3] Defendant testified:

"We did find one branch that had been sort of torn apart. And it was in the lower part of the nerve called the cervical or the digastric nerve that goes straight down into the neck. And I suspect that on retracting the gland that one little nerve may have been torn. We sewed those two ends together, but I didn't consider that much to worry about because I know that *that nerve goes down into the neck, and really has nothing to do with the motion of the face.*" (Emphasis supplied.)

[4] Plaintiff also called as experts a neurologist from Albany, Oregon, and an opthamologist from Salem, Oregon.

he had never been to Roseburg and did not know whether the equipment and staff required to use those diagnostic procedures were in the Roseburg area at the time of plaintiff's surgery. However, he testified that he understood Roseburg to be located less than two hours from Eugene, "and all the modern facilities are available in that locality."[5] When asked whether defendant had performed the surgery in accordance with "the standard of care normally to be expected in Roseburg and in similar communities," Turnbull responded that defendant had failed to meet that standard, because he had identified only the lower division of the facial nerve, rather than its main trunk and both its upper and lower divisions. His testimony was premised on the belief that the practices of a specially-trained and board-certified otolaryngologist are the same regardless of whether that individual is practicing in Newport Beach, California, or Roseburg, Oregon, because there is a "national standard of care" that is applicable to all otolaryngologists certified by the American Board of Otolaryngology.

■       Before trial, defendant presented a motion *in limine* to exclude Turnbull's testimony on grounds that he was not familiar with the methods and customary medical practices of specialists practicing in Roseburg or a similar community, and therefore was not competent to testify as a medical expert. The trial judge denied the motion. Defendant assigns error to that and other rulings, all of which address the admissibility of Turnbull's testimony.[6] Although defendant's argument is couched in terms of witness competence or qualifications, he does not dispute that Turnbull is an expert in the field of otolaryngology. OEC 702. Therefore, we take defendant's argument to be that, although Turnbull is qualified to testify about national standards in otolaryngology, those qualifications do not render him competent to testify about medical practices in a community similar to Roseburg.

---

[5] He also testified:

"I'm not saying that [the operation] shouldn't be done in Roseburg. I am saying that the diagnostic workup should be available. If it is not available in Roseburg, the patient can be sent to have that done [in Eugene]."

[6] Defendant moved to strike Turnbull's testimony, moved for a directed verdict, moved for a judgment notwithstanding the verdict, moved for a new trial, and requested jury instructions that would have removed from the jury's consideration each of plaintiff's allegations of negligence.

Turnbull testified that he had never been to Rose-burg and did not know the exact methods used by its physicians. However, when asked whether he was "aware of the method or methods used in the treatment and diagnosis of parotid tumors *under circumstances and in similar communities as [Roseburg],*" Turnbull answered, "I certainly am." When asked whether his opinion would be the same if, for example, a fine needle biopsy with radiology interpretation was not available in Roseburg, Turnbull responded that, where that test is available within an hour and a half drive from Roseburg (*i.e.,* in Eugene), he "fe[lt] strongly" that it is the duty of the doctor to utilize that test before the surgery is attempted. Turnbull repeatedly testified that, in the light of defendant's additional, specialized training, the standard of care was the same for defendant as it would be for any other specially-trained otolaryngologist in the nation. He maintained that, "[i]f the facilities are not available, [the physician] should send the patient to where they can be available or he should not do the procedure."

Viewing Turnbull's testimony as a whole, we conclude that he was sufficiently aware of the constraints under which defendant was practicing to render an opinion about the degree of care, skill and diligence that should be used in a community such as Roseburg. ORS 677.095; *see* note 2, *supra.* His opinion about the methods of otolaryngologists in "similar communities" took into consideration such relevant circumstances as defendant's specialized training and the availability of certain diagnostic testing equipment and staff.

An expert witness need not be familiar with the *legal* standard of care that is established by ORS 677.095, in order to be qualified to render an opinion. *Creasey v. Hogan,* 292 Or 154, 166, 637 P2d 114 (1981). Therefore, it was not fatal to plaintiff's case that Turnbull's testimony generally did not use the statutory language. As *Creasey* pointed out, the key determination is that the expert possess knowledge of *what constitutes proper medical treatment in a similar community.* 292 Or at 167. Turnbull's testimony was directed at the method of treatment that he considered "proper medical care" in a community similar to Roseburg. Certainly, his opinion that the American Board of Otolaryngology has established a "national standard of care" for specialists did

not prevent him from testifying about the propriety of a local specialist's treatment, for Oregon's "locality rule" does not preclude the possibility that certain standards of care are uniform throughout the nation. So long as the expert is able to testify that he or she is familiar with the applicable standard in the locality, it is immaterial that the expert also considers that standard to be the applicable one elsewhere. Although the size and nature of a medical community may vary, and thus proof of what constitutes proper treatment may vary, in this case, the jury was presented with evidence about the kind of care that should be expected from defendant and the ways in which he failed to provide that care.

We note that the trial court exercised considerable caution in determining whether the witness was qualified to testify. The record is replete with discussions between the court and the parties' attorneys regarding the propriety of Turnbull's testimony and the meaning of *Creasey v. Hogan, supra*. Turnbull's perpetuated testimony, on both direct and cross-examination, was available for the court's consideration before the trial began. The perpetuation deposition was reopened and additional testimony was received during trial. After lengthy and frequent debate between the parties, the trial court finally said, "The question would be how do ordinarily careful physicians practicing in communities similar to Roseburg, practice?" We agree. On appeal, defendant cannot escape the fact that that specific question was repeatedly asked and answered affirmatively by Turnbull. Defendant failed to object on the ground that no foundation had been laid to establish that Turnbull *did* in fact know about *similar* communities. In a letter opinion, the trial judge wrote,

> "Plaintiffs' expert may well have not been truthful when he testified that physicians in similar communities do all of these things before operating, or that had Defendant done them he would have discovered that the Plaintiff [had] an infection and not a malignancy, thereby rendering the surgery unnecessary. *Whether he should or should not be believed, however, is for the jury to decide in view of all the evidence, including any contradictory opinions rendered by Defendant's own 'out-of-town' experts. It does not mean Plaintiffs' doctor was incompetent to render an opinion.*" (Emphasis supplied.)

We agree that defendant's argument goes to the weight of Turnbull's testimony, not to its admissibility. The trial court did not err when it allowed the challenged testimony or when it denied defendant's related motions.

Affirmed.