Argued and submitted January 21, reversed and remanded on appeal; remanded on cross-appeal August 5, 1998

## In the Matter of the Marriage of

## Robert D. YAGER,
*Appellant - Cross-Respondent,*

*and*

## Connie YAGER,
*Respondent - Cross-Appellant.*

## (9512-74570; CA A96143)

963 P2d 137

Jack L. Kennedy argued the cause for appellant - cross-respondent. With him on the brief were Susan E. Watts, and Kennedy, King & Zimmer, LLP.

Chris P. Ledwidge argued the cause and filed the brief for respondent - cross-appellant.

Before Landau, Presiding Judge, and Deits, Chief Judge,* and Linder, Judge.

LANDAU, P. J.

---

* Deits, C. J., *vice* Leeson, J., resigned.

## LANDAU, P. J.

■      Husband appeals a dissolution judgment that declares invalid the parties' prenuptial agreement, divides the parties' assets, awards wife an equalizing judgment and orders husband to pay that judgment over the next 10 years. Husband challenges the trial court's conclusion that the prenuptial agreement is invalid and further disputes the terms of the division of assets. Wife cross-appeals, challenging the trial court's division of assets, its refusal to exclude certain testimony as to the value of those assets and its failure to award her spousal support. On *de novo* review, ORS 19.415(3), we conclude that the trial court erred in declaring invalid the prenuptial agreement and reverse and remand for reconsideration of the division of assets in light of that conclusion. We do not address the parties' other contentions regarding the division of assets. We do address wife's assignment on cross-appeal regarding the valuation testimony, as that issue likely will be relevant to the trial court's decision on remand.

The parties began living together in January 1982, when husband was separated, but not yet divorced, from his former wife. Both husband and wife had been married twice before. Wife had several jobs before she and husband began living together, including practicing as a licensed real estate agent. Husband was the half-owner of Basic Fire Protection, Inc., which designs, fabricates and installs automatic fire sprinkler systems. He owned, with a partner, the real estate on which the business is located. He also owned a substantial interest in a number of real properties, including a house and acreage in North Plains, a residence in Northeast Portland, a vacation home in Silver Lake, Washington, another in Canada, and beach property in Washington, as well as personal properties, including several boats. In addition, husband had a pension with the business and maintained several individual retirement accounts.

In June 1982, husband and his former wife were divorced, and husband and wife became engaged. In the several months that followed, the parties discussed husband's various holdings. Wife learned of his interest in the business

and the real property on which it was located. Husband told her of his pension, although he did not explain the precise amount of benefits that he had accrued at that time. Wife learned of his interest in the boats and the various other properties, as well. She visited the Silver Lake property more than once. She stayed at the vacation home in Canada. She drove by the North Plains residence, where, husband explained, his daughter by an earlier marriage then lived. She also drove by the Northeast Portland residence.

In early November 1982, husband asked his attorney, James Dicey, to draft a prenuptial agreement. Dicey did so, and, for the purpose of disclosing all of husband's assets, Dicey attached a copy of the June 1982 property settlement from husband's divorce, which listed each of the foregoing real and personal assets. The list did not include any specific values for each of the assets, however. The agreement provided that each party retained ownership of all property owned as of the date of the marriage. It provided that each made full disclosure to the other about their respective assets and that neither had any unanswered questions about the property of the other. It further expressly provided that wife read the attached settlement agreement that listed husband's assets.

Approximately two weeks later, husband showed the proposed prenuptial agreement to wife. She read it, but did not agree with it. She insisted that she be given a one-half interest in the house in which they resided. Husband agreed and had Dicey prepare an amended agreement. When husband presented the amended agreement to wife, he urged her to seek independent counsel. He gave her the names of three attorneys recommended by Dicey. Wife selected one, Charles Hodges. Wife scheduled an appointment with Hodges for December 7, 1982, four days before the parties' wedding.

Wife met with Hodges for approximately one-half hour. Husband later joined her, and Hodges explained to the parties the seriousness of the agreement and asked if either had any questions. Both husband and wife signed the agreement in the presence of Hodges. The parties then were married on December 11, 1982.

At trial, the court first held a hearing on the validity of the prenuptial agreement. Wife testified that she read the agreement in its original and its amended form. She said that she was aware that husband had ownership interests in the properties listed in the agreement, but that she did not know precisely the nature and value of those interests. She said that she understood at the time of execution that the agreement permitted husband to retain his interest in the assets listed. She said that she was upset about the agreement because it suggested less than a total commitment to their relationship, but that she signed it anyway because the wedding already had been planned and because she was not marrying him for his money.

The trial court concluded that the agreement was invalid. The court explained that husband's disclosure to wife as to the nature and value of his assets was insufficient and that the time wife had to consider the agreement was too short to uphold the validity of the agreement. The court noted that, because of its ruling on the validity of the agreement, it had refrained from considering the proper construction of the agreement—specifically, whether it applied to the increase in value of the listed assets that occurred during the marriage.

The parties then went to trial on the distribution of the marital assets. During the trial, husband called a real estate agent, James Hodges III, to give a comparative market analysis to determine at what price particular properties probably would sell. Wife objected on the ground that Hodges was not qualified to give an appraisal. Hodges explained that he was indeed not qualified to give an appraisal and that he was not attempting to give one. The trial court overruled the objection, explaining that the objection went to the weight of the testimony.

On appeal, husband challenges the trial court's conclusion that the prenuptial agreement is invalid. He argues that he informed wife of all of his assets, gave her ample opportunity to review the agreement and to insist on amendments to which he agreed and insisted that she consult with her own counsel about the terms of the agreement before executing it. He argues that, in fact, she knew about his assets and had personally viewed nearly every one. Wife contends

that the trial court correctly concluded that the agreement is invalid. According to wife, the law requires full and complete disclosure of the value of each asset and the precise nature of the ownership interest in it, which information husband did not make available in this case.

■       The validity of a prenuptial agreement is determined in the context of the circumstances in which it was executed. *Merrill v. Merrill*, 275 Or 653, 656, 552 P2d 249 (1976). In evaluating those circumstances,

> "[w]e primarily consider whether the parties were aware of the purpose of the agreement and the nature and extent of the property affected by it, and whether the document was presented to the receiving party at a reasonable time before the wedding to allow that individual the opportunity to seek counsel and review its terms."

*Baxter and Baxter*, 139 Or App 32, 36, 911 P2d 343, *rev den* 323 Or 483 (1996).

■       There is no hard and fast rule requiring disclosure of the precise nature of the interest in, and the value of, each item of property. In an early decision we did mention, in *dictum*, a need to disclose the " 'amount, character and value' " of all property. *Bauer v. Bauer*, 1 Or App 504, 508, 464 P2d 710 (1970) (quoting Lindey, 2 *Separation Agreements and Ante-Nuptial Contracts* 90-43 (1967)). In subsequent decisions, however, we have upheld the validity of prenuptial agreements without such detailed information.

In *McFerron v. Trask*, 3 Or App 111, 472 P2d 847 (1970), for example, the husband presented the wife with a prenuptial agreement a few days before the wedding. The wife did not have legal counsel of her own, and, apparently, the agreement did not contain detailed information about the value of the property involved. The wife, however, was an experienced business woman who admitted to knowing "the nature, if not the exact value," of the husband's assets. *Id.* at 116. We upheld the validity of the agreement. *Id.*

In *Knoll and Knoll*, 65 Or App 484, 671 P2d 718 (1983), the trial court invalidated a prenuptial agreement on the ground that the wife had not been given a detailed explanation of the terms of the contract. The wife, however, had

worked in her husband's business and was generally familiar with his assets. We held:

> "The sole reason for requiring a disclosure of assets is to advise the prospective spouse of the nature and amount of property that the antenuptial agreement will affect. Because husband's only substantial holdings were his business enterprises, wife's ongoing employment in those ventures provided her with an adequate disclosure. Accordingly, we find that she had a good understanding of the nature of husband's assets and realized that the assets had substantial value, although she may not have known his precise net worth."

*Id.* at 488.

In *Leathers and Leathers*, 98 Or App 152, 779 P2d 619 (1989), *rev den* 309 Or 625 (1990), the parties' prenuptial agreement provided that the wife waived any interest in certain of the husband's property, described in the agreement as "substantial assets, holdings and interest in real and personal property." We affirmed the validity of the agreement, finding that, when she signed the agreement, the wife was aware of the nature and extent of the husband's assets and that, after consulting with a lawyer over the telephone, she understood that she would not be entitled to any interest in the property that the husband held in his own name before the marriage. *Id.* at 157.

In this case, husband presented wife with a proposed form of agreement more than a week before the wedding. The agreement contained a complete list of assets. Wife read the agreement and insisted on amendments to it permitting her to share in the ownership of the family home. She did say that she was upset about the agreement, but because of the lack of commitment that she felt the agreement communicated, not because she felt that husband was attempting unfairly to pressure her. Husband insisted that she review the amended agreement with her own lawyer, and she did just that. There is no question that she was aware of the fact that husband had an interest in each of the properties listed and that husband's interest had substantial value. *Knoll*, 65 Or App at 488. There also is no question that she was aware of the effect of the agreement, that it meant that she would

not be entitled to any interest in property husband held in his own name before the marriage. *Leathers*, 98 Or App at 157.

We conclude that the prenuptial agreement is valid and enforceable. Because the trial court's property division was predicated on the invalidity of the agreement, the court did not have occasion—indeed, it expressly declined—to address the effect of the agreement on the property division, specifically, whether the agreement applies only to property husband owned before the marriage or applies to an increase in value of that property, as well. Accordingly, we reverse and remand for the trial court's consideration of those issues in light of our conclusion that the agreement is valid.

■ On cross-appeal, wife contends that the trial court erred in permitting real estate agent Hodges to testify as to the value of certain of husband's properties. According to wife, Hodges is not qualified to testify as to value, because ORS 674.100 forbids any person to engage in real estate appraisal activity without the necessary license, and the Appraiser Certification and Licensure Board has published an opinion stating that, under that statute, real estate brokers who are not licensed or certified appraisers may not offer testimony as to value. Husband argues that the fact that Hodges lacks an appraiser's license goes to the weight of the testimony, not its admissibility.

■ Determining whether an individual is qualified to testify as an expert witness is a matter that falls within the discretion of the trial court. *Myers v. Cessna Aircraft*, 275 Or 501, 519, 553 P2d 355 (1976); *Mosley v. Owens*, 108 Or App 685, 687, 816 P2d 1198, *rev den* 312 Or 527 (1991). OEC 702 provides that a witness may be qualified to testify as an expert "by knowledge, skill, experience, training or education" and that the trial court may permit the expert to testify if the testimony "will assist the trier of fact to understand the evidence or to determine the evidence or to determine a fact in issue[.]" There is no contention in this case that Hodges lacked knowledge, skill or experience as to the subject of his testimony or that his testimony could not assist the trial court in understanding the issues at hand. The sole contention is that Hodges could not testify because he lacked a license to conduct appraisals.

In *State Dept. of Trans. v. Montgomery Ward Dev.*, 79 Or App 457, 719 P2d 507, *rev den* 301 Or 667 (1986), the defendants objected to the testimony of a real estate professional licensed in California, but not in Oregon. The defendants argued that the witness was not qualified to testify because he lacked the license required by statute to perform professional real estate activity in Oregon. The trial court allowed the testimony, and we affirmed, holding that the "[l]ack of an Oregon license bears only upon the weight to be given his testimony." *Id.* at 470. *See also Mest v. Dugan*, 101 Or App 196, 202 n 8, 790 P2d 38, *rev den* 310 Or 133 (1990) ("There was no error in allowing plaintiff to present expert testimony by a real estate agent who was not a licensed real estate appraiser."). We conclude that the trial court did not abuse its discretion in permitting Hodges to testify.

Reversed and remanded on appeal; remanded on cross-appeal.